HENRY J. BAKER, CHARLES J. BAKER, and CONRAD BAKER, Respondents, *v.* BRADISH JOHNSON and MOSES LAZARUS, Appellants.

The defendants entered into a contract to deliver a quantity of alcohol " on board vessel under the tax law, from 20th August to 31st August, 1862, duty paid." Subsequently, the secretary of the treasury, by authority of law, postponed the time when the act to provide internal revenue was to go into operation, from the 1st of August to the 1st of September; in consequence of which there was no tax imposed upon alcohol during the month of August.

In an action to recover damages against the defendants, they having refused to perform the contract.—*Held* (FOSTER and HUNT, JJ., *contra*), that performance had not been rendered impossible by the act of the law, and the defendants were not excused.

The fact that performance of a contract is rendered more burdensome and expensive, by a law enacted after it is entered into, has never been held to exonerate a party from its obligations. (GROVER, J.)

(Argued January, 1870; decided March 24, 1870.)

THIS was an action, brought in the Superior Court of the city of New York, to recover damages for a refusal to deliver alcohol under a contract between the parties, made through a broker, which is as follows:

Sold H. J. Baker & Co., of Johnson & Lazarus,

Two hundred and fifty barrels of alcohol, usual ninety-five per cent; eighty-eight per cent new standard.

Four iron hoops, prime western barrels.

Delivered on board vessel under the tax law, from 20th of August to 31st August, 1862 ; duty paid.

Broker for seller.   At forty-five cents cash.

W. W. VAN. BOSKERK,

*Broker,* 81 *Wall Street.*

NEW YORK, *July* 19*th,* 1862.

Previous to July 1st, 1862, there was no law providing that any tax or duty should be levied upon domestic, distilled spirits.

On the 1st day of July, 1862, congress passed an act imposing certain duties upon all spirits that might be distilled and sold, or removed for consumption or sale, on or after the 1st day of August, 1862, but providing that when such duty had been paid, and such spirits were afterward exported, an allowance, or drawback, should be made and paid back, equal to the amount of duty paid.

On the 17th of July, 1862, congress passed a joint resolution, approved by the president on that day, declaring that all sections of said act, requiring any matter or thing to be done on or before the 1st day of August, 1862, be so amended and changed that said matters or things may be so done on or before any other day in that year, not later than October first, which may be fixed and determined upon by the secretary of the treasury.

On the 19th of July the contract above set forth was entered into.

Subsequently, and before the 1st of August, the secretary of the treasury determined and fixed upon the 1st day of September, 1862, as the day when those sections of the act should go into operation.

The defendants did not deliver any alcohol ; and, on the 30th day of August, 1862 (the 31st falling on Sunday), the plaintiffs tendered the contract price of forty-five cents per gallon and demanded delivery of the alcohol, and the defendants refused.

It appeared from the evidence, that alcohol, of the quality and style of package mentioned in the contract, had a market

value of from sixty-three to seventy-one cents per gallon, on the 30th of August. And that, by the tax law, the duty upon such spirits would be forty cents per gallon.

There was evidence that, in July, 1862, "under the tax law" meant, as understood in the trade, that the spirits were to be manufactured under the law, and was so understood by the plaintiffs when the contract was made. Also, that there were, at that time, two kinds of sales, one known as "short price," when the article was for exportation, and the other called "long price," when it was for home consumption, whether to be manufactured under the tax law or then on hand; and that the phrase "under the tax law" referred to the "short price" article. That the short price was about forty-five cents and the long price about sixty cents per gallon at the date of the contract.

Upon the trial, when the plaintiffs rested, and again after the testimony was closed, the defendants moved to dismiss the complaint on the ground (besides others): "That the action of the secretary of the treasury, in postponing from the 1st of August to the 1st of September, 1862, the operation of the act of congress of July 1st, 1862, known as the tax law, had made impossible, and so discharged the performance by defendants of the contract".

The motion was denied and the defendants excepted.
The judge then directed a verdict for the plaintiffs, and that the exceptions be heard in the first instance at the General Term, to which the defendants excepted.

The question of amount of damages was submitted to the jury, and, under the instructions of the court, the plaintiffs had a verdict for $2,559.38.

The exceptions were overruled by the General Term and judgment entered for the plaintiffs upon the verdict, from which judgment the defendants appealed to this court.

(The case below is reported 2 Rob., 570.)

*Edgar Logan,* for the appellants, argued that the language of the contract meant alcohol to be manufactured under the

tax law; and, owing to the postponement, it was impossible to deliver such alcohol in August, by reason of which the defendants were excused, citing 2 Parsons on Cont., 186; *Mounsey* v. *Drake* (10 John. R., 28); *Jones* v. *Judd* (4 Comst., 413); Coke Litt., 206 *b*; *People* v. *Manning* (8 Cow., 297); *Beebe* v. *Johnson* (19 Wend., 500); *Wolfe* v. *Howes* (20 N. Y., 197); Broom's Leg. Max., vol. 34, Law Lib. N. S., pp. 112, 117, 120.

*John E. Parsons*, for the respondents, insisted that the contract was made with direct reference to the act and, therefore, to the possibility of the change, and the postponement could not affect the defendants' liability, citing Story on Cont., § 975; Chitty on Cont., 630, note; *Gilpins* v. *Consequa* (1 Peters C. C. R., 91); *Youqua* v. *Nixon* (id., 221). That the change did not render performance impossible, and the defendants were not excused, he also cited 8 Cow., 297; 4 Comst., 412; 19 Wend., 500; and *Wolfe* v. *Howes* (24 Barb., 174, 666); *Carpenter* v. *Stevens* (12 Wend., 589); *People* v. *Bartlett* (3 Hill, 570); *Faley* v. *North* (19 Barb., 341); *Niblo* v. *Binsse* (44 Barb., 54).

GROVER, J. If the counsel for the appellant is right in his position, that the contract for the sale and delivery of the alcohol by the defendant included such alcohol only as was subject to the tax imposed by the act of congress, passed July 1st, 1862, he is also right in his further position that the defendant was discharged from the contract by his performance having been made impossible by act of law. The time fixed for the delivery of the alcohol was in August, 1862. The contract for the sale was made in July, 1862. The act imposing the tax provided that it should go into operation August 1st, 1862. Congress passed a joint resolution July 17, 1862, conferring power upon the secretary of the treasury to postpone the time of the act going into operation to a period subsequent to that fixed by the act. The secretary, pursuant to the power thus conferred, postponed the opera-

tion of the act until September 1st, 1862. No tax was imposed upon alcohol or spirits manufactured prior to the act going into operation. It is clear, therefore, that no alcohol was subject to the tax before September 1st, 1862, and that none subject to such tax could have been delivered in August, 1862. In order fully to arrive at the intention of the parties, in making the contract, it must be kept in mind that the tax imposed by the act was designed to include only such spirits and alcohol as were consumed in the country, and that provision was made for refunding the tax paid upon such as were exported therefrom. The contract was made July 19, 1862, and provided for the delivery of the alcohol on board of a vessel under the tax law from the the 20th to the 31st August, 1862, duty paid. This shows that at the making of the contract the parties believed that the act imposing the tax would go into effect as therein provided August 1st, 1862. That the alcohol to be delivered would thereafter be manufactured, and consequently subject to the tax which would be prepaid by the defendant before delivery. I think the agreement fairly inferred from the writing, construed in the light of the extrinsic facts proved, was that the plaintiff should export the alcohol, and that thereupon the defendants should be entitled to have the taxes paid thereon by them refunded. The inquiry is as to what, if any, part of this contract became impossible of performance by the postponement of the operation of the act by the secretary. It will be seen that the only effect of the postponement was to relieve all alcohol manufactured in August, and the material from which it was manufactured, from the payment of any tax. The defendants could have performed their contract by its delivery without any such payment, and having paid no tax, would not be entitled to any refunding. This was the only direct effect of the postponement upon the contract. This in no way rendered performance by the defendants impossible. On the contrary, performance in this view was thereby facilitated. But the counsel for the appellants insists that there were two kinds of alcohol, the one described as the long and the other as the short priced, the

former being the article subject to the tax which had been paid, and the other from which the duty was deducted, and claims to have established this by the proof given upon the trial. This distinction, as applied to all alcohol manufactured before September 1st, 1862, has no foundation, as no tax was paid upon any part of it. The price of all of like quality was the same. But it could readily be seen at the time this contract was made that all alcohol manufactured before the law went into operation would gradually rise, until it reached the price of that manufactured in the country thereafter with the tax paid, as the former could enter into the consumption of the country equally with the latter, and that this rise would commence at once upon the enactment of the law, although not to take effect until some time thereafter. Alcohol manufactured after the act took effect could be sold for exportation at a lower price than either, because upon this the tax paid to government would be refunded. The case comes to this, not that there were two kinds of alcohol bearing different prices at the time the contract was made, for at that time none had been subjected to the payment of a tax, but that the contract was made in the expectation by the parties that the alcohol to be delivered by the appellants to the respondents would be manufactured after the law took effect, and having been sold for export, and therefore not taxable, could be afforded at a price less than that which could be used in the country without payment of a tax thereon. The effect of the postponement made by the secretary was not, therefore, to make performance of the contract any more beneficial to the plaintiff, nor to render it impossible for the defendant, but to make performance more expensive and burdensome. This has never been held to exonerate such party from the obligation of his contract. Should it be so held, every increase of a duty or tax upon goods, enacted after the making and before the performance of a contract for the sale thereof, would discharge the seller, and upon the like reasoning a reduction would discharge the purchaser. There can be no question but that the respondents would have been bound to accept alcohol of the pre-

scribed quality manufactured at any time upon the contract. The defendant, although at a greater cost to himself, was bound to procure and deliver it. The judgment must, therefore, be affirmed with costs.

FOSTER, J., read an opinion for reversal on the ground that it was plainly the intention of both parties to contract for an article to be manufactured after the law of July 1st should go into operation, and for no other alcohol whatever; and the delivery of such an article having become impossible in consequence of the change in the law, the defendants were absolved from the agreement.

HUNT, J., was also for reversal.

SUTHERLAND, INGALLS, LOTT and SMITH, JJ., concurred with GROVER for affirmance. EARL, Ch. J., not voting.

Judgment affirmed.