NEW YORK & N. H. AUTOMATIC SPRINKLER CO. v. ANDREWS.

(Supreme Court, Appellate Division, First Department.   June 7, 1901.)

CONTRACTS FOR IMPROVEMENTS—RIGHT OF CONTRACTOR TO RECOVER—UNDER-
WRITER'S CERTIFICATE—NECESSITY.

Plaintiff contracted with defendant to install a sprinkling system in defendant's factory according to certain specification,—the work to be done subject to the rules of the New York underwriters,—and it was provided that the compensation therefor should be payable after the issue of a certificate of approval by the board of underwriters. That plaintiff performed the work according to the specifications was unquestioned. The board of underwriters refused to issue a certificate, because the water supply, for which plaintiff was not responsible, was defective, and because defendant did not furnish a sufficient pump to be used in connection with the system. *Held* not to defeat plaintiff's right to recover the contract price.

McLaughlin and Patterson, JJ., dissenting.

Appeal from trial term, New York county.

Action by the New York & New Haven Automatic Sprinkler Company against James F. Andrews. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

Argued before McLAUGHLIN, PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Charles E. Hughes, for appellant.
Michael H. Cardozo, for respondent.

INGRAHAM, J.   In this action the plaintiff sought to recover the amount agreed upon for supplying the defendant's factory at Astoria, L. I., with the "dry-pipe system of automatic sprinklers, in accordance with the rules and regulations of the New York Board of Fire Underwriters." The contract is evidenced by a proposal signed by the plaintiff and accepted by the defendant. It was therein provided:

"The work and materials under this proposal to consist of furnishing and placing one cedar tank of sufficient capacity on top of a foundation to be erected by J. F. Andrews. Enough sprinklers to meet the requirements of the New York Board of Fire Underwriters. All the necessary risers, pipes, fittings, and labor to put in position all necessary sprinklers. The system to be erected so that it will drain back to central points. A cut-off valve on each floor of the two main buildings, a check valve under the tank, and one at a point where the city water enters the system. Necessary gate valves for the risers. * * * The work to be done subject to the rules of the New York Board of Fire Underwriters,"—with further provisions as to painting the tank and protecting it from frost.

This was what, under the contract, the plaintiff agreed to do, and for this work it was to receive the sum of $1,400. It was not disputed but that the plaintiff completed this work according to the contract, and, having finished it, it asked to be paid the contract price. The defendant, however, refused to pay, upon the ground that a certificate of approval of the New York Board of Fire Underwriters was to be procured before there was any obligation of the defendant to pay for the work done. This is based upon the following clause of the contract:

"The above price includes all labor, transportation, and traveling expenses and board of men, and shall be in full for all material furnished under this contract, and shall be payable after a certificate of approval shall have been issued by the New York Board of Fire Underwriters."

And it was claimed by the defendant that such a certificate of approval had not been issued, and that the plaintiff's right to recover the contract price was conditioned upon such certificate having been issued.

The contract plainly contemplated the doing of certain work by the plaintiff in the defendant's factory, and by the contract certain obligations were imposed upon the defendant. The defendant was to build a foundation upon which the tank was to be erected. He was also to bring the water from the street inside the walls of the building; and while, under the contract, the money was earned when the plaintiff did the work that it was required to do under the contract, it was not payable until the certificate of approval was issued by the New York Board of Fire Underwriters. The rules of the board of fire underwriters were introduced in evidence. They prescribe specific requirements for automatic sprinklers. The character of the sprinklers is specified. Distribution of sprinkler heads and arrangements for supplying pipes are provided for. Certain tanks are required. There is also a provision for water supply, as follows:

"Each sprinkler equipment must have at least two approved sources of supply, one of which shall be from a tank, as herein provided for.  *  *  * Each secondary water supply must be of sufficient quantity and pressure to fully operate for one hour at least seventy-five per cent. of all the sprinklers which are located in the largest room or compartment, inclosed within non-combustible walls, to which the system gives protection.  *  *  * In case where the risk is located beyond the reach of a fully-organized, paid fire department, provision must be made to supply the pipes with water from an independent and reliable source, operating automatically upon the opening of a sprinkler head. Where steam or power pumps are accepted in connection with a secondary source of water supply, they must each have a capacity of at least 600 gallons per minute, and be so constructed as to have no 'dead center,' and be arranged to operate automatically upon the opening of a sprinkler head, and to draw from a supply of water sufficient to last at least one hour of full working capacity. A guaranty must be given in the policy that sufficient power will at all times be maintained to work the pumps effectively."

The work that the plaintiff was required to do was done as required by these rules of the board of fire underwriters. Upon application to that board for a certificate, an instrument was given which certified that the buildings owned by the defendant "have been fully equipped with automatic sprinklers by the New York & New Haven Sprinkler Co., arranged for dry-pipe system for the winter months." The equipment is then described, and the certificate proceeds:

"No certificate can be issued for this equipment, because it does not fulfill the requirements of this board in the following particulars, viz.: The premises are located beyond the reach of a fully-organized, paid fire department, and provision is not made to supply the pipes with water automatically upon the opening of a sprinkler head, and the pump is not of 500-gallon capacity per minute, and there is no guaranty that steam will be maintained at all times to work pump."

The inspector for the board of fire underwriters was called, and testified that he inspected this work, and that the objection to giving the certificate was that "there was no pump, or not a proper-sized pump, and the city supply was not acceptable to the board. It was a question of water supply." Upon the trial the complaint was dismissed on the ground that a certificate of the board of fire underwriters had not been obtained, as required by the contract.

The contract contained explicit provision as to the work that the plaintiff was to do, for which it was to receive the sum of $1,400. It is not disputed but that the plaintiff performed the work which it was required to do. The contract also provided that this amount should be payable upon obtaining a certificate of the board of fire underwriters; and the correctness of the direction of this verdict depends upon the proposition that this amount never could be payable until such a certificate had been obtained, irrespective of the cause that prevented its issuance. Here the plaintiff did not undertake to procure the certificate. There was no undertaking on its part that the work should be performed in such a way that the board of fire underwriters would accept it: The plaintiff agreed to perform the work according to the rules of the board of fire underwriters. That it did. It was also agreed that the money should be payable when a certificate was issued by the board of fire underwriters. All contracts which provide that the contract price shall be payable upon a third party's issuing a certificate are subject to the condition that where the production of such a certificate is rendered impossible by any act other than that of the plaintiff, or where such a certificate should have been supplied, but is unreasonably withheld or refused, the plaintiff may recover, notwithstanding the fact that no certificate is produced. This rule has been applied in many cases, and is now the settled law of this state. Thomas v. Fleury, 26 N. Y. 33, was to recover the final payment under a contract whereby the defendant was "to pay the sums named in the manner and at the times mentioned in the agreement, provided that in each case a certificate was obtained, signed by the architect." The architect refused to give a certificate, but it was held that, if he unreasonably and in bad faith refused, the plaintiff was not to be held responsible, but could establish his right to recover by other evidence. "The certificate is mere evidence of the substantial fact of performance; and, if the kind of evidence of the fact stipulated for is obstinately and unreasonably withheld, a forfeiture of $2,700 is not to be exacted for that reason from the plaintiff." This has been followed in many cases, and is now the settled law of this state. MacKnight Flintic Stone Co. v. City of New York, 160 N. Y. 72, 54 N. E. 661, is the latest case in which this principle has been applied. In that case the plaintiff was to furnish "all the materials and labor for the purpose, and make watertight the boiler room, * * * in the manner and under the conditions prescribed and set forth in the annexed specifications," and was to turn the work over to the city in perfect order, and guarantied absolutely water and damp proof for five years from the date of the acceptance of the work. It was held that the reasonable

meaning of this obligation was that the plaintiff agreed to make the boiler room water-tight by following the plan and specifications, provided it could be done in that way; that the fault of the defendant's plan should not prevent the plaintiff from recovering payment for good work done and good materials furnished precisely as the defendant required; that "the reasonable construction of the covenant under consideration is that the plaintiff should furnish the materials and do the work according to the plan and specifications, and thus make the floor water-tight, so far as the plan and specifications would permit." Under the contract, a certificate by the superintendent that the contract had been performed was made a condition precedent to the plaintiff's right to receive the contract price, but the court said:

"If the work was faithfully performed according to the plan and specifications, and the failure to secure a water-tight boiler room was wholly owing to the defective design of the defendant, the plaintiff would be entitled to recover, notwithstanding the refusal of the superintendent to give the required certificate; for under those circumstances it would be his duty to give it, and a refusal to do so would be unreasonable."

Certainly, upon the principle here stated, if the plaintiff complied with its contract,—did the work that the contract required it to do, according to the rules and regulations of the New York Board of Fire Underwriters,—and thus completed its work, the fact that under the contract the amount due the plaintiff was not payable until a certificate was issued by that board would not prevent the plaintiff from recovering, because such certificate was refused by reason of the failure of the defendant to comply with the requirements of that board, which requirements the plaintiff was neither bound to nor had the power to comply with. It is quite evident that the plaintiff would have had no power to enter upon the defendant's premises and provide a new pump for the defendant, nor could the plaintiff give a guaranty that steam would be maintained at all times to work the pump. Certainly the plaintiff was not required to provide a fully-organized, paid fire department for this locality. Nothing in the contract required the plaintiff to comply with the rules and regulations of the New York Board of Fire Underwriters as to the water supply. The plaintiff's contract was performed when it installed in this factory the dry-pipe system of automatic sprinklers, with the tank, sprinklers, and necessary fittings; and the plaintiff was not responsible because of a failure of the defendant to comply with the requirements of the board of fire underwriters as to the water supply, or as to a pump and the steam necessary to operate the pump.

In neither of the decisions rendered upon former appeals in this action was there any principle established contrary to the view here expressed. On the first appeal (4 Misc. Rep. 124, 23 N. Y. Supp. 998) the court held that the failure to obtain a certificate from the board of fire underwriters would not prevent a recovery if the plaintiff established that it had complied with its contract, and the certificate was unreasonably refused. Upon appeal from the second judgment, where the plaintiff had a verdict (38 App. Div. 56, 55 N.

Y. Supp. 1020), the judgment was reversed because evidence that the system did not and would not drain to central points, as provided for by the contract, and of the negotiations and conversations between the parties leading up to the written contract, was improperly excluded. This evidence was held competent upon the ground that it might have appeared that the certificate was required not merely as evidence that the plaintiff had done the stipulated work, but for an independent value of its own; that it might very well be that the defendant had no faith in the efficacy of the plaintiff's system as a protection against fire, and would not have agreed to pay a penny for it by itself, but was well content to buy the appliances at the contract price on condition that the plaintiff also obtain the underwriters' certificate, which would lower the rates of insurance on the factory. Upon this trial such evidence was admitted, but it failed to show that the plaintiff assumed any obligation to obtain a certificate, except that expressed in the contract, or that it assumed the burden of supplying any defects or any conditions required for such a certificate that were not included in the work which it was to perform. It is undoubtedly true that the plaintiff understood that the defendant's object of having this appliance furnished was to procure lower rates of insurance, and that the defendant's tenants had agreed to pay a proportion of net cost of equipment of the factory after obtaining the certificate of the New York Board of Fire Underwriters. That the appliance was ordered for the purpose of obtaining decreased rates of insurance, which were to be based upon obtaining this certificate, was understood by both the parties; but if, to obtain the certificate, an additional pump was necessary, or an additional water supply was to be furnished, the obligation to comply with such condition of the board of fire underwriters was not imposed upon the plaintiff, and a failure of the defendant to comply with such conditions would not preclude the plaintiff from recovering for the contract performed by it. It was at least a question for the jury to say whether the plaintiff substantially performed its contract, and whether the refusal of the certificate was caused by a failure of the plaintiff to comply with any obligation assumed by it, and a finding in favor of the plaintiff would have been sustained by the evidence.

It follows that the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

O'BRIEN and LAUGHLIN, JJ., concur.

McLAUGHLIN, J. (dissenting). The contract under which the plaintiff predicates his right to recover provides, among other things, that "enough sprinklers" should be put in and so equipped in defendant's building as "to meet the requirements of the New York Board of Fire Underwriters"; and, in thus equipping the defendant's building, the work, in all respects, was "to be done subject to the rules of the New York Board of Fire Underwriters. * * *" For equipping the building in this manner, the defendant agreed

to pay a specified price; but the contract expressly provides as to the price, and the time when the same should become payable, as follows:

"The above price includes all labor, transportation, and traveling expenses and board of men, and shall be in full for all material furnished under this contract, and shall be payable after a certificate of approval shall have been issued by the New York Board of Fire Underwriters."

Upon the trial the certificate of approval provided for in the contract was not produced, nor was any evidence offered tending to establish that the board of fire underwriters had ever granted such certificate, or that it had unreasonably or arbitrarily refused to grant the same. On the contrary, it did appear that it had refused to give such certificate, for the reasons (1) that the building in which the sprinklers were placed was located "beyond the reach of a fully-organized, paid fire department"; (2) that provision was not made to supply the pipes with water automatically upon the opening of a sprinkler head; (3) that the pump which supplied the pipes with water was not of 500-gallon capacity per minute; and (4) that no guaranty had been given that steam would be maintained at all times to work the pump. The payment for the installing of the defendant's building with the sprinklers was dependent upon the production of this certificate, and until it had been produced, according to the terms and conditions of the contract, the plaintiff was not in a position to insist upon the contract price, or to demand the payment therein provided. It appeared upon the trial, and the fact was not disputed, that the object to be attained by the defendant in putting in the sprinklers was not so much to obtain protection against fire as it was to secure the certificate, in order that a lower rate of insurance upon the building might be had, and of which fact the plaintiff was fully informed prior to and at the time of the execution of the contract. It therefore entered into the contract with full knowledge that the certificate was an essential and a material part of the contract. Upon a former appeal this provision of the contract was considered, and the law applicable to it laid down in an opinion delivered by Mr. Justice Cullen (38 App. Div. 56, 55 N. Y. Supp. 1020), in which, referring to the certificate, he said:

"If such a certificate enables an owner to secure insurance at less rates than he would be required to pay in the absence of the certificate, then it was an essential part of the plaintiff's contract, and it should obtain the certificate. It might very well be that the defendant had no faith in the efficacy of the plaintiff's system as a protection against fire, and would not have agreed to pay a penny for it by itself, but was well content to buy the appliances at the contract price on condition that the plaintiff also obtain the underwriters' certificate which would lower the rate of insurance on the factory."

It seems to me, we are bound by this construction of the contract, and such construction necessarily requires an affirmance of the judgment appealed from. But, independent of it, it seems to me, the judgment, upon principle, should be affirmed. The rule is well settled that where a plaintiff's right to recover depends upon some condition precedent, that a recovery cannot be had until

that condition be clearly and satisfactorily established. Thus, in Wheeler v. Insurance Co., 82 N. Y. 543, 37 Am. Rep. 594, it was said that, "when a person by express contract engages absolutely to do an act not impossible or unlawful at the time, neither unavoidable accident nor other unpleasant contingencies not within his control will excuse him, for the reason that he might have provided against them by his contract"; and it was there held that the failure to pay an insurance premium as required by the policy was not excused by reason of the insanity of the insured. In Mittnacht v. Wolf, 6 N. Y. St. Rep. 44, the plaintiff presented to the defendant a proposition to furnish materials and to perform the necessary labor in erecting iron balconies in such a way as to equip the defendant's building with fire escapes according to the requirements of the building department of the city of New York. The proposition was accepted, and the balconies constructed. Thereafter an action was brought to recover the contract price, and the defendant defended upon the sole ground that the plaintiff had not performed according to the terms and conditions of the contract. Upon the trial no proof was offered to the effect that the balconies had been erected in accordance with the requirements of the building department, and for that reason a verdict was directed for the defendant. On appeal it was held that the plaintiffs were not entitled to recover, under the express terms of the contract, until such proof had been furnished. See, also, Baker v. Johnson, 42 N. Y. 126; Ward v. Building Co., 125 N. Y. 230, 26 N. E. 256. Under the express terms of the contract, the plaintiff is not entitled to the payment therein provided until he has produced the certificate referred to. He did not produce it upon the trial, and its nonproduction was not the fault either of the New York Board of Fire Underwriters or of the defendant. Therefore it seems to me that, for the plaintiff's failure to produce the certificate, the complaint was properly dismissed. I think the judgment appealed from should be affirmed, with costs.

· PATTERSON, J., concurs.