(69 Misc. Rep. 601.)

### ADLER v. MILES.

(Supreme Court, Appellate Term. December 2, 1910.)

1. APPEAL AND ERROR (§ 927*)—REVIEW—JUDGMENT ON DIRECTED VERDICT.

On appeal from a city court judgment entered upon a verdict directed for plaintiff upon a statement being made of defendant's alleged defense, the facts stated in the alleged defense must be accepted as true for the purposes of the appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3748; Dec. Dig. § 927.*]

2. LANDLORD AND TENANT (§ 199½*)—LIABILITY FOR RENT—VALIDITY OF DESIGNATED USE OF PREMISES.

Where a tenement house was leased for a moving picture show, and subsequently the city by ordinance prohibited the licensing of moving picture shows, located in tenement houses, so that the premises could not be used for the intended purpose, nor the lease performed according to its terms, the lessee was discharged from liability for rent, and its surety was not liable therefor to the landlord.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 199½.*]

3. CONTRACTS (§ 309*)—PERFORMANCE — PERFORMANCE MADE IMPOSSIBLE BY CHANGE IN LAW.

Where the law creates a duty, and the party is disabled from performing it without any default on his part, and he has no remedy over, the law will excuse him; but where the party, by his own contract, creates a duty on himself, he is bound to make it good if he may, notwithstanding any accident or inevitable necessity; but this rule does not apply where performance becomes impossible by a change in the law or by reason of action taken under governmental authority.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1444; Dec. Dig. § 309.*]

Appeal from City Court of New York, Trial Term.

Action by Aaron Adler against Herbert L. Miles, as surviving partner of the firm of Miles Brothers. From a judgment for plaintiff, and an order denying a motion to set aside the verdict and for a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before SEABURY, PAGE, and BIJUR, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

McDonald & Bostwick (Arthur C. Bostwick, of counsel), for appellant.

Goldfogle, Cohn & Lind (Alfred D. Lind and L. E. Schlechter, of counsel), for respondent.

SEABURY, J. The defendant guaranteed the payment of rent under a lease entered into between the plaintiff as landlord and the Hub & Comedy Theater Company as tenant. The plaintiff sues to recover five months' rent alleged to be due under the lease. The lease provided that the premises were leased "to be used and occupied for the purpose of a place of amusement for the exhibition of moving pictures and no other purposes whatsoever." The defendant, as his sole defense to the action, claims that the premises demised was and is a tenement house, and that under a ruling duly made by the mayor of the city of New York, under ordinances regularly passed by the board of aldermen, it was provided, prior to the time of the accrual of the rent sued for, that no license for a moving picture show should be granted when the premises in which the show was located, solely or in part was a building known or described as a tenement house, and that, under the ordinances of the city of New York, no moving picture show could be lawfully given without a license. Upon a statement being made of the alleged defense, the court below, upon motion of the plaintiff, directed a verdict in favor of the plaintiff. From the judgment entered upon such direction, the defendant appeals to this court. In view of the manner in which the verdict was directed, the facts stated in the alleged defense must, for the purpose of this appeal, be accepted as true. It was conceded, upon the trial, that the lease was valid when made, but that, through the order of the mayor, the use to which the demised premises were restricted by the lease became unlawful.

We think that the learned court below was in error in directing a verdict for the plaintiff. It is evident that the defendant cannot be held as surety unless his principal is liable upon the lease. Jewett v. Griesheimer, 100 App. Div. 210, 91 N. Y. Supp. 654. The inquiry to be made, therefore, must relate to ascertaining whether the lessee was liable for the rent named in the lease after the public authorities had prohibited the use of the premises for the sole purpose for which the premises had been leased.

The general rule was declared in the old case of Paradine **v.** Jane, Aleyn's Reports, pp. 26, 27:

"That where the law creates a duty or charge, and the party is disabled to perform it without any default in him, and hath no remedy over, there the law will excuse him. * * * But, where the party by his own contract creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract."

This general rule does not apply where performance becomes impossible by a change in the law or by reason of action taken under governmental authority. In such a case the reason for the general rule does not exist. The parties to the lease contracted with a view to the law as it existed at the time the lease was made. To hold

them bound to anticipate future legislation would be equivalent to making them obligate themselves to the performance of conditions prescribed by others, which in the nature of things could not have been within the contemplation of the parties at the time the contract was made. The parties to the lease contracted to do a thing which at the time the lease was made was lawful. Public authority, in accordance with law, has provided that the very thing which the parties in their lease contemplated should not be done. To carry out the lease according to its terms has now become unlawful. It follows, therefore, that the lease cannot be performed according to its terms, and under such circumstances the obligation of the lessee to pay rent is discharged.

In Brick Presbyterian Church v. City of New York, 5 Cow. 538, Savage, C. J., in considering the effect of a covenant, the performance of which subsequent public action had made illegal, notes a variance in the earlier authorities. He points out that in Brason v. Dean, 3 Mod. 39, it was held that such a covenant was not repealed and refers with approval to Brewster v. Kitchin, 1 Salk. 198, where "a different and more rational doctrine is established." In the case last referred to the rule is stated as follows:

"When H. covenants not to do an act or thing which was lawful to do, and an act of Parliament comes after and compels him to do it, the statute repeals the covenant. So if H. covenants to do a thing which is lawful, and an act of Parliament comes in and hinders him from doing it, the covenant is repealed."

In Baily v. De Crespigny, L. R. 4 Q. B. 180, Hannen, J., referring to the rule laid down in Brewster v. Kitchin, supra, says that:

"It rests upon this ground: That it is not reasonable to suppose that the Legislature, while altering the condition of things with reference to which the covenanter contracted, intended that he should remain liable on a covenant which the Legislature itself prevented his fulfilling."

In his opinion in that case, Hannen, J., says:

"The substantial question, therefore, raised on this record, is whether the defendant is discharged from his covenant by the subsequent act of Parliament, which put it out of his power to perform it. We are of opinion that he is so discharged on the principle expressed in the maxim 'lex non cogit ad impossibilia.'"

After commenting upon a case where the act of God, so called, excuses performance, the learned judge says:

"This is the explanation of the case put by Lord Coke in Shelley's Case, 1 Rep., at page 98a: 'If a lessee covenants to leave a wood in as good a plight as the wood was at the time of the lease, and afterwards the trees are blown down by tempest, he is discharged of his covenant'—because it was thought that the covenant was intended to relate only to the tenant's own acts, and not to an, event beyond his control, producing effects not in his power to remedy. See Shep. Touch. 173. It is on this principle that it has been held that an impossibility arising from an act of the Legislature subsequent to the contract discharges the contractor from liability. Again, to quote an observation of Maule, J., in Mayor of Berwick v. Oswald, 3 E. & B., at page 665, there is nothing 'to prevent parties, if they choose by apt words to express an intention so to do, from binding themselves by a contract as to any future state of the law; * * * but people in general must always be considered as con-

tracting with reference to the law as existing at the time of the contract, * * * and the words shewing a contrary intention ought to be pretty clear to rebut that presumption.' To hold a man liable by words, in a sense affixed to them by legislation subsequent to the contract, is to impose on him a contract he never made."

The rule so clearly enunciated by Hannen, J., was applied in this state in Brick Presbyterian Church v. City of New York, supra. In that case it appeared that the corporation of the city of New York conveyed lands for the purpose of a church and cemetery with a covenant for quiet enjoyment, and afterwards, pursuant to a power granted by the Legislature, passed a law prohibiting the use of these lands as a cemetery. The court held that such action was not a breach of the covenant, but that the covenant itself was repealed.

In Baker v. Johnson, 42 N. Y. 126, the court recognized the rule that one is discharged from the obligation of a contract when his performance is made impossible by act of law. The majority of the court, however, were of the opinion that the action of the public authorities in postponing the time when a tax exemption should go into operation did not render performance impossible, but only more burdensome on defendant, and hence he remained bound.

In People v. Globe Mutual Life Insurance Company, 91 N. Y. 174, where an insurance company was restrained by an order of the court from further prosecuting its business and a receiver appointed, it was held that a contract entered into by it with a general agent for his services for a specified time was thereby annulled by the action of the state, and that the general agent had no cause of action for nonperformance by the company.

In Massachusetts the rule referred to above has been applied. In Baylies et al. v. Fettyplace et al., 7 Mass. 325, 338, Sedgwick, J., said:

"Now it is clearly settled, by innumerable authorities, that whenever a contract, which was possible and legal at the time it was made, becomes impossible by the act of God or illegal by an ordinance of the state, the obligation to perform it is discharged."

In Michigan it was held, in Cordes v. Miller, 39 Mich. 581, 33 Am. Rep. 430, Judge Cooley writing for the court, that a covenant in the lease of a wooden building, binding the landlord to rebuild in case it burns, is released by the passage of a valid municipal ordinance forbidding the erection of wooden buildings.

In Mississippi & Tennessee Railroad Company v. J. & T. Green, 56 Tenn. 588, 593, the court said:

"The nonperformance of a contract will always be excused, when it is occasioned by act of law."

In Sauner v. Phœnix Insurance Company, 41 Mo. App. 480, Ellison, J., stated the correct rule in the following language:

"When a party by his own contract creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident by inevitable necessity because he might have provided against it by his contract. Paradine v. Jane, 8 T. R. 267. * * * Yet this rule is qualified in some respect; among others is this: If doing the thing contracted for becomes unlawful, performance becomes impossible by force of law, and nonperformance is excusable."

Section 231 of the real property law (Consol. Laws, c. 50) recognizes the doctrine of these cases and provides that, whenever the lessee shall use the premises for an illegal business, the lease shall become void. Here the lease restricted the use of the premises to a purpose which was subsequently prohibited by law, and for the tenant to have used the premises for the sole purpose for which the lease authorized them to be used would, under section 231 of the real property law, have avoided the lease.

A contrary rule to that upheld by these authorities seems to have been stated in Abadie v. Berges, 41 La. Ann. 281, 6 South. 529; but the doctrine of that case is not in accord with the weight of authority or in harmony with the adjudications which have been made in England or in this state. Except for the early case of Brason v. Dean, 3 Mod. 39, I have found no English case contrary to the view here expressed, and the case of Brason v. Dean has not been followed, but has been distinctly repudiated.

Atkinson v. Ritchie, 10 East, 530, is not in point. In that case the master of a vessel agreed to proceed to St. Petersburgh and there load a complete cargo of hemp and iron and proceed with it to London. The master, after taking about half a cargo, sailed away from St. Petersburgh upon a rumor of a hostile embargo being laid on British ships by the Russian government.

The court held that he was liable for damages though the jury found that he acted bona fide and under a reasonable apprehension at the time. Lord Ellenborough applied the principle of Paradine v. Jane, supra, and pointed out that, at the time the master left St. Petersburgh with only half a cargo, no actual change in the political relations of Great Britain and Russia had taken place, and that it was not enough to avoid the contract that the restraint was merely expected and contingent, "as this at most only was." Nor are the cases in this state upon which the respondent relies authority for the judgment which has been rendered.

In Jones v. Judd, 4 N. Y. 411, the defendant contracted with the state to construct a section of the Genessee Valley Canal, and made a subcontract with the plaintiffs for a portion of the work. Before completion of the plaintiff's job, the work was stopped by state officers, and the original contract terminated by act of the Legislature. The court held that the plaintiffs were entitled to recover the price agreed on for the work actually done by them.

In Kerley v. Mayer, 10 Misc. Rep. 718, 31 N. Y. Supp. 818, affirmed 155 N. Y. 636, 49 N. E. 1099, it was held that a provision in a lease that the premises are let "to be used and occupied only as a strictly first-class liquor saloon" does not restrict the tenant to the saloon business, but merely restricts the character of such business if carried on. Consequently the court held that a refusal of a license on the ground that the premises are so situated as to be within a prohibition of the act of the Legislature does not relieve the lessee from the payment of rent under the lease, as he is not deprived of the beneficial use of the premises, but may use them for any lawful purpose.

By implication, therefore, this case supports the view that, if the

lessee could not have used the premises for any lawful purpose, that fact would have relieved the lessee from the obligation to pay rent.

The case of Shedlinsky v. Budweiser Brewing Company, 163 N. Y. 437, 57 N. E. 620, is authority merely for the proposition that a lease is not invalid because the purpose for which the demised premises are to be used might under certain circumstances, as to the existence of which the proof is inconclusive, be unlawful. The implication from this case is that where the premises are positively to be used for an unlawful purpose, and the evidence of this fact is conclusive, the lease becomes illegal.

In the case of Ernst v. Crosby, 140 N. Y. 364, 35 N. E. 603, the court held that the circumstances warranted a finding that the plaintiff's grantor was a party to the plan of continuing the unlawful use of the premises, and that the new lease was but a cover for continuing the unlawful use of the premises.

The authorities upon which the respondent relies are therefore not in point, and it is evident, from a review of the cases cited above, that the action of the public authorities subsequent to the making of the lease, rendering it unlawful to use the premises demised for the only purpose for which they were leased, discharged the tenant from the obligation to pay rent under the lease.

As the tenant was not obligated to pay the rent, it follows that the defendant as surety is not liable to the plaintiff upon his guaranty.

Judgment reversed, and new trial ordered, with costs to the appellant to abide the event.

PAGE, J., concurs.

BIJUR, J. (concurring). In addition to the considerations set out in the opinion of Mr. Justice SEABURY, I think it may be pointed out profitably that it cannot be maintained that the lessee could be held to his bare covenant to pay rent, notwithstanding the alleged illegality of the purpose of the use for which the premises had been leased originally.

The lease provides that the premises are "to be used and occupied for the purposes of a place of amusement for the exhibition of moving pictures and for no other purposes whatsoever."

In the case of Chautauqua Assembly v. Alling, 46 Hun, 582, 586, the court says that words like "only" or "solely," in a lease of this nature, are words of restriction, and intimates that such words would be equivalent to an express covenant of the lessee not to put the premises to any other use.

In the case of Weil v. Abrahams, 53 App. Div. 313, 66 N. Y. Supp. 244, the lease read "to be used as an oilcloth store, and dry goods store"; there being, however, no words of restriction. An injunction issued against use for holding auctions, on the theory of an implied covenant not to use for other purposes than those expressed. See, also, Gillian v. Norton, 33 How. Prac. 373.

When, therefore, by appropriate legislation, the use of the premises in the case at bar for the only purpose for which they had been leased,

and the purpose for which the lessee agreed to use them exclusively, was made illegal, a situation was created analogous to the happening of a condition subsequent, whereby, within the intention of both parties when the lease was made, it may fairly be said that the entire instrument was to be defeated.

I concur in the reversal of the judgment.