THE ABBAYE v. UNITED STATES MOTOR CAB CO.

(Supreme Court, Appellate Term.   March 23, 1911.)

1. CONTRACTS (§ 221*)—TERMINATION—CONDITIONS PRECEDENT.

Plaintiff as lessee of part of a building in which it conducted a restaurant granted defendant a permit, required by the New York City Ordinances, for a private hack stand in front of the premises for a monthly rental, for a definite period.   Three or four months thereafter plaintiff's "all night" restaurant license expired, and renewal was refused, whereupon the restaurant was compelled to close at 1 a. m.   The contract contained a provision that defendant should maintain a cab starter from 6 p. m. to 6 a. m.   *Held*, that such provision was a mere detail of the business, and that the continuance of plaintiff's "all night" license was not a condition precedent to the continuance of the contract, and hence the termination thereof did not terminate the contract.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 221.*]

2. CONTRACTS (§ 309*)—DISCHARGE—IMPOSSIBILITY OF PERFORMANCE.

Where a defendant contracted to maintain a private hack stand in front of plaintiff's restaurant, the fact that plaintiff's "all night" license was not renewed did not authorize the termination of the contract under the rule that such action of the city authorities had rendered the contract impossible of execution.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1444–1446; Dec. Dig. § 309.*]

3. MUNICIPAL CORPORATIONS (§ 663*)—STREETS—OCCUPATION FOR HACK STAND.

Where plaintiff occupying certain premises as a restaurant contracted with defendant to maintain a private hack stand in front of the premises at an agreed monthly rental for a definite period, such contract was not illegal as an attempted lease of a public street.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 663.*]

4. LANDLORD AND TENANT (§ 134*)—LEASE—INCUMBRANCES.

Where a lease of a building used as a restaurant did not expressly forbid the maintenance of a private hack stand in front thereof, a contract by which defendant agreed with the lessee to maintain such stand for a specified period at a specified rental was not invalid in the absence of any objection by the landlord, as violating a provision of the lease forbidding incumbrances on approaches to the premises.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 482–486; Dec. Dig. § 134.*]

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by The Abbaye against the United States Motor Cab Company.   From a judgment for defendant, plaintiff appeals.   Reversed, and new trial ordered.

Argued before SEABURY, PAGE, and BIJUR, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Leonard Bronner (S. Marshall Kronheimer, of counsel), for appellant.

Arthur W. Opp, for respondent.

BIJUR, J. [1] No questions other than of law are involved in this case. Plaintiff as lessee of part of a building conducted a restaurant. It agreed with defendant, in substance, to grant it a permit (which is necessary under the Code of Ordinances of the City of New York) for the establishment of a private hack stand in front of the premises. Defendant agreed to pay a monthly rental for this permit for a definite period. Three or four months after the initiation of the arrangement, the "all night" restaurant license enjoyed by the plaintiff was, as the record states, revoked (although, to be accurate, it no doubt expired and a renewal was refused), and thereafter plaintiff's restaurant was compelled to close at 1 a. m. Thereupon defendant declined to pay any longer the monthly sum, contending, in substance, that, the enjoyment of the "all night" license by the plaintiff with the consequent profitable business derived during the early morning hours by the defendant having been terminated, the contract between the parties came to an end, or, to put it in the language of some of the leading cases on the subject, defendant contends that there was an implied condition in the contract between the plaintiff and defendant that, if the "all night" license should be revoked, defendant might treat the contract as thereby abrogated. I cannot agree with the learned court below that the agreement in, or the circumstances of, this case bring it within the rule. The happening of an event not brought about by the action of either party, and not provided for in the agreement itself, will not be interpreted as terminating the agreement merely because the further enforcement of the contract is thereby made more burdensome to one or the other party. Baker v. Johnson, 42 N. Y. 126.

[2] Nor does this case come within the category of those where subsequent legislation has made illegal the carrying out of a contract which had theretofore been legal; or, as some authorities put it, had made it impossible of execution. See Adler v. Miles, 126 N. Y. Supp. 135. But the distinguishing feature in the case at bar is that neither from the language of the agreement nor from the surrounding circumstances as developed at the trial can it be inferred that the "all night" license was regarded by the parties as the basis of the contract, nor that its revocation was a totally unlooked for circumstance. While it may be that the revocation of the license has rendered the contract far less profitable to defendant than it had been theretofore, it still subsists. Plaintiff continues to carry out its part of the agreement; and there is ample substantial consideration continuously moving to the defendant for the payments which it had agreed to make.

As to the agreement itself, the only indication that "all night" business was even contemplated is a provision that the defendant would maintain a taxicab starter from 6 p. m. to 6 a. m.—a provision as to a mere detail of the business, intended to provide certain accommodations in view of the manner in which the business was expected to be conducted, but far from a persuasive indication that the "all night"

business was regarded as a sine qua non, or as the basis of the agreement. In this respect the case at bar differs from the leading case of Lorillard v. Clyde, 142 N. Y. 456, 37 N. E. 489, 24 L. R. A. 113, and subsequent cases in which the decision of the Lorillard Case has been cited, often indeed as affirming a rule much broader than its language warrants.

My view, moreover, is confirmed by a reading of the careful opinion of Vaughan Williams, J., in the well-known and recent case of Krell v. Henry, 1903, 2 K. B. 740, where the entire rule is thoroughly discussed and expounded. In that case the lease of a window for the purpose of viewing the coronation procession was held to be nonenforceable by reason of the postponement of the coronation.

[3] I see no merit in another point raised by the defendant, namely, that the agreement between plaintiff and itself was illegal because it attempted to give a lease of a public street. My interpretation of the terms of the agreement in that respect as hereinabove set forth is a sufficient answer to that contention.

[4] Nor do I find to be well taken the objection that the lease under which plaintiff occupied the restaurant forbade as an incumbrance upon the approaches to the premises any such arrangement as the one involved in this controversy. The language of the lease did not expressly forbid such arrangement, defendant actually enjoyed the privilege accorded, and there is not the slightest indication that the landlord made any objection.

Judgment reversed and new trial ordered, with costs to appellant to abide the event. All concur.