## Wilt v. Keiper.

*Judgment — Opening judgment — Striking off judgment—Amendment— Practice, C. P.*

1. Where a judgment is regular on its face and the judgment is attacked, the proper practice is to take a rule to open, but if in such case a rule to strike off is taken, the court may treat the record as amended and open the judgment if it is satisfied that the defence is sufficient.

*Landlord and tenant—Lease of premises to vend liquor—18th Amendment —Volstead Act—Impossibility of using premises for purpose specified in lease.*

2. Where the law creates a duty, and a person, without fault on his part, is disabled from performing, failure to perform is excused, but where a party by contract imposes a duty upon himself, he is bound to made good if he can, notwithstanding any inevitable accident or unforeseen contingency, except where performance becomes impossible because of a change in the law or as a result of action taken under governmental authority.

3. Where a lease provides that a lessee shall procure a liquor license, and that he shall use the premises as a licensed hotel and for no other purpose, and he is prevented from using the premises as a licensed hotel, within the meaning of the lease, by the 18th Amendment and the Volstead Act, he is released from the payment of rent on such premises.

4. Liquor, as commonly understood in its limited sense, means intoxicating liquors, such as brandy, whiskey, rum, gin, etc.

Rule to show cause why judgment should not be stricken from the record. C. P. Cambria Co., June T., 1920, No. 99, *fi. fa.* to No. 4, Sept. T., 1920, E. D.

*Alvin Sherbine,* for rule.

*W. C. Fletcher* (of Blair County Bar) and *Mathiot Reade,* contra.

EVANS, P. J., April 17, 1922.—On July 1, 1915, the plaintiff and the defendant entered into a lease or contract, whereby the plaintiff leased to the defendant certain premises, situate in the Borough of South Fork, Cambria County, Penna., having thereon erected a four-story frame building known as the

Globe Hotel, for a term of five years eight and one-half months, from the 1st day of July, 1915, at an annual rental of $1500, payable $125 per month, at the end of each and every month during the term. Said lease contained, among other provisions, the following:

"Subject to a license to sell liquor in said building being obtained by the said lessee; any refusal of said license or any refusal of a renewal thereof, unless by the fault or neglect to apply by the lessee, to work a termination of this lease with no further liability of the lessee for rent.

"And the lessee further covenants and agrees that he will use and keep the said premises as a licensed hotel and for no other purposes."

The lease further provided, in substance, that any removal or attempted removal of any goods or chattels from the premises shall be deemed a fraudulent and clandestine removal and the whole rent for the entire term shall fall due and be collected, and authorizing the lessor, as fast as default is made in the payment of the rental, to appear for the lessee and confess judgment or judgments against him for the amount of the rent then unpaid, etc.

At the time of the execution of this contract a license to sell liquor in Pennsylvania conferred the right to sell intoxicating liquor. The parties to this contract, in their depositions taken, used the word "liquor" in its commonly understood term of meaning intoxicating liquor, and the plaintiff, among other things in his examination, testified as follows: "Q. Isn't it a fact, Mr. Wilt, that Mr. Keiper said to you that the right to sell liquor at the Globe Hotel was the sole and moving cause of his taking an interest in the property? A. Well, we would naturally think that it would be. Q. And you so understood it? A. Yes, at that time."

And the defendant in his testimony stated as follows: "Q. State whether or not the right to sell liquor at the Globe Hotel was the moving and sole consideration for your entering into the lease dated July 1, 1915, with Mr. Wilt? A. It was."

Following the execution of this contract, the 18th Amendment was added to the Constitution of the United States, which became effective Jan. 16, 1920, and prohibited the sale of intoxicating liquors by any person after that date.

Prior to Jan. 16, 1920, the defendant notified the plaintiff that he would yield up possession of the leased premises on Jan. 16, 1920, for the reason that the 18th Amendment to the Constitution and the enforcement act, known as the Volstead Act, made it unlawful for him to use the premises for the purposes contemplated by the parties at the time of the making of the contract, and that under the contract he was not liable for rent beyond that time. This position was denied by the plaintiff, who maintained that under the laws as they were effective Jan. 16, 1920, and thereafter, a license to sell nonintoxicating liquors could be secured, and that so long as such license was not refused to the defendant, the contract was in force and effect.

The defendant left the premises on or about Jan. 16, 1920. After having tendered to the plaintiff a check for $50, said to have been one-half month's rent, which tender the plaintiff refused to accept.

On or about March 22, 1920, the plaintiff caused a judgment to be confessed against the defendant in the sum of $1903.13, being the alleged rent for the balance of the term of $1812.50, and attorney's commission of $90.63. According to an affidavit attached to the said confession, the judgment was entered on the ground that no rent had been paid since December, 1919, and that sometime in January, 1920, the defendant, without the knowledge or consent of the plaintiff, and in violation of the terms of the lease, abandoned and removed

2 D. & C.

from the property, whereby the rental for the remainder of the term became due and payable, and caused an execution to be issued upon the said judgment. The defendant, on June 24, 1920, presented his petition asking that the judgment be stricken from the record and the writ stayed, whereupon the court stayed the writ of *fieri facias* and granted a rule to show cause why the judgment should not be stricken from the record.

The judgment being regular upon its face, the application should have been to open the judgment: King v. Brooks, 72 Pa. 363. The court may, however, treat the record as amended and open the judgment, if satisfied that the defence is sufficient: von Storch v. Phelps, 2 Kulp, 112.

The first question to determine is whether or not the word "liquor," as used in this contract, means intoxicating liquor. The words or language of a contract are to be construed as they are commonly understood. We find in 25 Cyc., 1445, and in 1 Woollen & Thornton on the Law of Intoxicating Liquors, § 2, the opinion that the word "liquor," as commonly understood in its limited sense (that is, in the sense more limited than as liquid or fluid substances), means intoxicating liquors, such as brandy, whiskey, rum, gin, etc.

At the time of the making of this contract a liquor license granted by the Court of Quarter Sessions in Pennsylvania conferred the right to sell intoxicating liquor, so that a reference in a lease providing for the use of premises as a licensed hotel and for no other purpose, and making a lease subject to the securing of a license to sell liquor, meant, in our opinion, a license to sell intoxicating liquors for beverage purposes and not a mere license to sell a liquor or fluid substance of a non-intoxicating character. The parties themselves, as it appears from a reading of the testimony in the case, had in mind at the time this contract was made that the premises were to be used as a place where intoxicating liquors were to be sold for beverage purposes, and the contract specifically limited the use of the premises to that of a licensed hotel; that is, a hotel where intoxicating liquors might be dispensed for beverage purposes.

We are, therefore, of the opinion that the lease in suit was a grant of a right to use the premises therein described for the purpose of conducting a place where intoxicating liquors might be sold, and forbade the use of the premises for any other purpose.

The second question is the effect of the 18th Amendment to the Constitution and the enforcement law, known as the Voldstead Act, upon this contract. Counsel have not cited to us any Pennsylvania decision bearing directly upon this point, nor have we been able to find any. The counsel for the defendant, however, furnished us with a copy of an opinion by the Supreme Court of the State of New York (a court equivalent to our Common Pleas Court), in the case of Lucy E. Doherty v. Monroe Eckstein Brewing Company, heard before the Hon. Charles L. Guy, Robert F. Wagner and Philip J. McCook, in which case the principles which we believe control the present case are cited and discussed. From the above stated opinion we quote the following:

"The general rule is that where the law creates a duty, and a person, without fault on his part, is disabled from performing, failure to perform is excused, but where a party by contract creates a duty upon himself, he is bound to make good if he can, notwithstanding any inevitable accident or unforeseen contingency; but the rule has no application where performance becomes impossible by a change in the law or as a result of action taken under governmental authority. The rule is thus stated by Parsons on Contracts, at vol. 2, page 674. . . .

"That the illegality of a contract is now generally a perfect defence must be too obvious to need illustration. It may, indeed, be regarded as an impossibility by an act of law, and it is put upon the same footing as an impossibility by act of God, because it would be absurd for the law to punish a man for not doing, or, in other words, requiring him to do that which it forbids him doing. Therefore, if one agrees to do a thing which is lawful for him to do, and it becomes unlawful by an act of the legislature, the act avoids the promise. . . .

"To the same effect, see Brick Presbyterian Church v. City of York, 5 Cow. 538; Baker v. Johnson, 42 N. Y. 126; 3 Elliott on Contracts, § 1901; Bishop on Contracts, § 594; Wharton on Contracts, § 305. . . .

"This court, in Adler v. Miles, 69 Misc. 601, after reviewing the authorities on this subject, held that the performance of a contractual relation was excused by the supervening condition brought about by the operation of a change in the law which made its performance illegal. In that case the defendant, when sued for rent, claimed, while originally it was lawful for him to conduct a motion-picture business on the premises which constituted what was known as a 'tenement house,' that subsequently an ordinance was passed which provided that no license for such purpose should be granted when a show was given in a building known as a tenement house, and that, consequently, the lease was terminated by act of law.

"Justice Seabury, writing for this court, said:

"The parties to the lease contracted to do a thing which at the time the lease was made was lawful. Public authority, in accordance with law, has provided that the very thing which the lease contemplated should not be done. To carry out the lease according to its terms has now become unlawful. It follows, therefore, that the lease cannot be performed according to its terms, and under such circumstances the obligation of the lessee to pay rent is discharged.

"In the instant case, the lease made to the brewery concern expressly limits and restricts the lessee's use of the premises to the saloon business. No other purpose is authorized. The presence of the words or restrictions is, therefore, equivalent to an expressed covenant not to put the premises to any other use: Chatauqua Assembly v. Alling, 46 Hun (N. Y.), 582. It follows, accordingly, that if it should be found upon the facts appearing in the record before us that a continuation of the use of the premises in question as a tenant by the parties would be violative of the fundamental law, we would be compelled to hold that the law, as changed ex proprio vigore, terminated the lease and discharged the lessee from future requirements in the payment of rent. For, in that event, the lease becomes void because the use contemplated by the parties was one in express contravention of the statute."

In the present case, the lease of the premises was for the purpose of conducting a place for the sale of intoxicating liquors, and under the principles cited above, which, in our opinion, apply to the present case, the right of the lessee to use the premises for the purpose contemplated by the contract ceased and ended on Jan. 16, 1920, and thereafter the use not being permitted, the rent would not become due and payable.

The question as to payment of rent for any period less than one full month would seem to have been contemplated by the parties to the contract, for the reason that they provided for a half-month in their contract. The rate of rental under this contract was $125 per month. It is admitted that the rent was paid up until the last of December, 1919, so that there remains unpaid

2 D. & C.

Wilt *v.* Keiper.

the rental from the 1st to the 16th day of January, 1920, or substantially one-half month, and the amount of the rent would be $62.50.

There being no disputed facts to be determined by a jury, the judgment should be opened and modified by the court, so as to have it cover only the amount of rent from Jan. 1st to Jan. 16, 1920. We, therefore, enter the following decree:

Now, April 17, 1922, the judgment in the above stated case is opened and modified so as to read: "In the sum of $62.50, with interest thereon from the 16th day of January, 1920."

From H. W. Storey, Jr., Johnstown, Pa.