JONAS WEIL and BERNHARD MAYER, Respondents, *v.* SAMUEL ABRA-
HAMS and MAX ABRAHAMS, Appellants.

*Landlord and tenant — injunction to prevent auction sales in a store rented to be
used as an oil cloth and dry goods store.*

Where a lease provides that the demised premises shall "be used and occupied
as an oil cloth store and dry goods store," and forbids the display of signs of
any kind "at, in or about the entrance" to the store without the landlords'
written consent, an injunction may properly be granted prohibiting the lessees
from conducting auction sales of oil cloth and dry goods at such store and from
displaying auctioneers' flags announcing such sales without the permission of
the lessors.

APPEAL by the defendants, Samuel Abrahams and another, from
an order of the Supreme Court, made at the New York Special
Term and entered in the office of the clerk of the county of New
York on the 30th day of March, 1900, restraining the defendants
from using or occupying the corner store or building on the south-
east corner of Grand and Essex streets, in the borough of Man-
hattan, city of New York, as an auction salesroom or as a place
where auction sales are conducted, or from using or displaying an
auctioneer's flag or any other sign or flag, announcing or indicating
an auction sale to take place in said premises, and from selling any
goods in said premises other than dry goods and oil cloths.

The lease in question provided that the building was "to be used
and occupied as an oil cloth store and dry goods store." It did not
contain any express covenant that the premises should not be used
for any other purpose than that stated in the lease.

*Moses Feltenstein,* for the appellants.

*Boudinot Keith,* for the respondents.

Order affirmed, with ten dollars costs and disbursements, on the
opinion of LAWRENCE, J.

Present — VAN BRUNT, P. J., RUMSEY, PATTERSON, O'BRIEN and
HATCH, JJ.

The following is the opinion of LAWRENCE, J. :

LAWRENCE, J. :

The plaintiffs are the landlords of a building on the southeast corner of Grand and Essex streets, in the city of New York, which is not quite completed. Plaintiffs leased to the defendants by a written lease entered into on the 22d of November, 1899, the corner store of the building to be used and occupied as an oil cloth store and dry goods store, which lease was to commence on May 1, 1900, and to continue three years. It is not disputed that the lease as at first prepared stated that the premises were to be used and occupied as an oil cloth store, and that subsequently, at the request of the defendants, the words "and dry goods store" were inserted in the lease, and that the lease was then executed. By a note dated November 21, 1899, the plaintiffs permitted the defendants to occupy the store from March 1, 1900, to May 1, 1900, free of rent. It is claimed that the defendants are carrying on an auction business in violation of the covenant contained in the lease, and in violation of the understanding upon which the permission to occupy the store between March 1 and May 1, 1900, free of rent, was granted, and a preliminary injunction restraining the defendants from carrying on such auction business has been granted.

There was a covenant in the lease on the part of the defendants that they would "neither place, or cause or allow to be placed, any sign or signs of any kind whatsoever, at, in or about the entrance to said store, except in or at such place or places as may be indicated by the said landlords and consented to by them in writing." It is alleged in the complaint that in violation of this covenant the defendants are displaying from said premises an auctioneer's flag, and they are by the order further restrained from displaying from said premises such flag or any other notice or signs indicating that auction sales are to take place on the premises, and from selling any goods upon said premises other than oil cloths or dry goods. The motion comes before the court on the return of the order to show cause why the injunction should not be continued during the pendency of the action ; the defendants resist the motion, claiming that the plaintiffs perfectly well knew at the time they executed the lease and granted the permission to the defendants to occupy the store rent free from March 1, 1900, to May 1, 1900, that the defendants were engaged

in Sixth avenue in conducting auction sales of oil cloths and their incidents, and dry goods and their incidents, and that the plaintiffs understood that the defendants would auction oil cloths and sell other wares on said premises, together with dry goods, and that it was never intended to restrict the manner of sale by the defendants, but as a matter of fact the defendants continually conducted auction sales of dry goods and oil cloths, but occasionally sold job lots at auction, which it is their business to buy, and which manner of sale is the only profitable way in which they could be disposed of. There are affidavits also read on the part of the defendants refuting the allegations in the plaintiffs' papers, that the business in question is calculated to annoy parties occupying other stores in said building and in the vicinity, and alleging that there is absolutely no noise or annoyance of any kind whatever in said place to anybody. These allegations are in turn denied by the plaintiffs, and the questions, therefore, that are presented by this motion are, *first*, do the words contained in the lease prohibit the defendants from carrying on an auction business such as is described in the defendants' own papers; and, *secondly*, if they are so prohibited, do the terms of the lease apply to the permission granted the defendants to occupy the store from March 1 to May 1, 1900, free of rent? I think both of these questions must be answered in the affirmative. A question almost precisely similar was presented in the case of *Steward* v. *Winters* (4 Sandf. Ch. 587). In that case, a lease for a store contained a clause that it should be occupied for " the regular dry goods jobbing business, and for no other." It was held that the lessee could not carry on in the store the business of an auctioneer. It was further held that if the tenant conducted the auction business in the store, the lessor might restrain him from pursuing that business by injunction, and that, where the lessee covenants for a particular use of the demised premises, equity will restrict him to that use without any irreparable or even substantial injury being shown from a breach of the covenant. In that case the vice-chancellor said : " Without wasting time upon the well-established distinction between a dry goods jobber and an auctioneer, which is too clearly marked to be confounded or obliterated by affidavits, I will proceed to the only question in the cause, that of jurisdiction. It is said that the remedy at law for damages is ade-

quate, and that so far from there being an irreparable injury by the continuance of the breach of this covenant, it is shown that there can be no injury at all. I apprehend that we are not to regard this subject in the manner indicated by the latter proposition. The owner of land, selling or leasing it, may insist upon just such covenants as he pleases, touching the use and mode of enjoyment of the land ; and he is not to be defeated, when the covenant is broken, by the opinion of any number of persons that the breach occasions him no substantial injury. He has a right to define the injury for himself, and the party contracting with him must abide by the definition."

Now, in this case, it is admitted that the right to occupy the premises for the dry goods business was obtained after the preparation of the lease, which stated that the premises were to be used and occupied as an " oil cloth store." This addition to the proposed lease was made at the request of the defendants, and by that request, I think, the parties put a practical construction upon the language of the lease and agreed that the premises could not be occupied as a dry goods store without the permission of the landlords. That being so, it is perfectly clear that the auction business could not be carried on upon the premises by the defendants unless the permission so to do was inserted in the lease. The contention by the defendants that the auctioning off of goods was merely incidental to the oil cloth business, or to the dry goods business, cannot, in my opinion, be maintained, not only because a sale by auction is not the usual way of conducting the oil cloth and dry goods business, but also because, as was shown in the case of *Steward* v. *Winters* (*supra*), a dry goods business is very different from an auction business. Nor do I think that there is any force in the contention of the defendants that the covenants in the lease do not apply to the use and occupation of the premises in question between the 1st of March and the 1st of May, 1900. In the note or memorandum dated November 21, 1899, the plaintiffs, in addressing the defendants, say : " This is to certify that you may occupy store rented by you for a term of three years from May 1, 1900, in building corner Grand & Essex Sts., from March 1, 1900, to May 1, 1900, free of rent." There is nothing in this to show that there was to be any difference in the nature of the occupation of the store between March and May, 1900, from that which was to follow for the three years under the lease,

except that such occupation was to be free of rent. The two instruments must be read together and must be regarded as one and the same, and it seems idle to say that while the plaintiffs deemed it essential that they should restrict the kind of business which the defendants were to carry on for the three years following the 1st of May, 1900, they intended to permit a different occupation for a period during which the defendants paid no rent and the plaintiffs received no compensation. For these reasons I think that the injunction should be continued until the cause can be tried, ten dollars costs of motion to the plaintiff. Settle order on one day's notice.