## HECHT v. ACME COAL COMPANY.
### (No. 640.)

LANDLORD AND TENANT—INTOXICATING LIQUORS—LEASE OF PREMISES
FOR SALOON PURPOSES—EFFECT UPON LIABILITY FOR RENT OF SUB-
SEQUENT ENACTMENT OF A LAW PROHIBITING A LICENSE FOR THE
SALE OF LIQUORS—TRIAL—REOPENING CASE FOR FURTHER EVIDENCE
—DISCRETION OF COURT—LIABILITY OF GUARANTOR—ASSIGNMENT OF
LEASE—RIGHT OF ASSIGNEE TO ENFORCE GUARANTY.

1. A lease for unlawful purposes at the time of its execution
   is void.

2. Premises situated outside of any incorporated city or town
   were leased in 1908 for saloon purposes for the term of
   five years at an agreed monthly rental. In 1909 (Laws
   1909, Ch. 7), a statute was enacted forbidding the granting
   or extending of any license for the sale of liquors outside
   of incorporated cities and .towns, and a former statute
   provided a penalty for selling intoxicating liquors without
   a license. The lessee's license expired July 24, 1909, and
   thereupon he vacated the premises and declined thereafter
   to pay rent. *Held,* that whether the words "for saloon
   purposes," were used in the lease in a permissive or re-
   strictive sense the lessee was not relieved from liability
   for the payment of rent by the change in the law aforesaid,
   there being no provision in the lease relieving him from
   liability in such an event, and the lessee not .having accepted
   a surrender of the premises.

3. Where a lease of premises for saloon purposes contained a
   provision relieving the lessee from the payment of rent
   during the time the saloon might be closed upon notice
   that the employees of the lessors or their assigns in the
   operation of their coal mines in the vicinity of the leased
   premises were on a strike or locked out, and no other pro-
   vision was contained in the lease exempting the lessee from
   liability for rent during the term of the lease. *Held,* that
   the provision aforesaid excluded by implication the relief
   of the lessee from payment of rent during the term of the
   lease in any case except in the event therein stated.

4. Defendant, who was sued as a guarantor of rent upon a
   lease of premises for saloon purposes, sought to escape
   liability on the ground that a law passed after the execution
   of the lease made the sale of intoxicating liquors upon the
   premises unlawful, and during the argument moved to
   reopen the case to permit him to show that the rental value

of the property for saloon purposes other than the sale of intoxicating liquors was much less than the amount of the agreed rental. *Held,* (1) That it was not an abuse of discretion to deny the motion. (2) That the evidence proposed would not have been admissible, since there was no provision in the lease for an abatement or proportional reduction of the rent for the cause upon which relief from payment was sought.

5. The liability of the one who guaranteed in writing the lessee's full, complete and faithful performance of a lease, with all its terms, conditions, and covenants, was unconditional and equally as broad as his principal, and he was liable for the rent upon the lessee's failure to pay.

(ON PETITION FOR REHEARING.)

6. An unqualified assignment of all the rights and privileges of the lessor under and by virtue of a lease carries with it the security of a written guaranty of the lessee's performance of the terms and conditions of the lease, and entitles the assignee to recover the rent from the guarantor upon the lessee's failure to pay the same.

7. A lease of premises for "saloon purposes" is not necessarily to be construed as confining the business to be conducted upon the premises to the sale of intoxicating liquors exclusively, for it would not prevent the sale of cigars and soft drinks; and the evidence is held to show that both parties to a lease for saloon purposes contemplated that the business should include the sale of soft drinks and cigars as well as intoxicating liquors.

[Decided February 28, 1911.]            (113 Pac., 788.)
[Rehearing denied June 30, 1911.]       (117 Pac., 132) .

Error to the District Court, Sheridan County, Hon. Carroll H. Parmelee, Judge.

The action was brought by the Acme Coal Company, as the assignee of a certain lease, to recover from the lessee and his guarantor certain rent alleged to be due under and by virtue of the lease. The guaranty is set out in the opinion in No. 639, a case between the same parties. The lease was assigned by an instrument reading as follows: "For good and valuable consideration, the undersigned hereby sell, assign, transfer and set over to Acme Coal Company, a corporation, all our rights and privileges under

and by virtue of the foregoing lease.  In witness whereof, said parties have hereunto set their hands this 5th day of November, 1908.  A. K. Craig, Ora Darnall, composing a co-partnership under firm name and style of Darnall and Craig.  Witness, James H. Burgess." The other material facts are stated in the opinion.

*M. B. Camplin* and *Camplin & O'Marr*, for plaintiff in error.

It was error to exclude evidence offered by the defendant Hecht to prove that the rental value of the building did not exceed fifteen dollars per month.  The defendants offered the evidence on account of the position taken by the plaintiff that the lessee would be authorized to continue to sell cigars and soft drinks under the lease for saloon purposes.  We think that position is erroneous, but sought to prove and could have proven that if used for other purposes than the sale of intoxicating liquors the rental value would not exceed the monthly rate above stated. The word saloon has many definitions, including a place where intoxicants are sold, and in this state it is universally referred to and understood to be a place where intoxicating liquors are sold.  The lease itself clearly shows it to be understood that the building was to be used as a place for the sale of intoxicating liquors, for it stipulated that the saloon should be closed in case of a lock-out or strike of the miners; the object being to prevent drunkenness and rioting.. It is clear that if the building was only worth fifteen dollars per month for ordinary purposes, 85 per cent of the agreed rental was in consideration of the consent of the owners of the coal company to allow a saloon there; and the owners of the company put up the building. If the law was as it now is when the lease was made, it is clear that the rental would not have been as high as that stated in the lease.  After the expiration of the license the defendants were excused and all parties were excused from all obligations under the lease, for the reason that no further license for the sale of intoxicating liquors could

be secured by reason of the change in the law, which prohibited the granting or extending of any such license in
any place outside of an incorporated city or town.

Upon expiration of the license the lease became illegal
and unlawful. (Heart v. East Tenn. Brew. Co., 113 S. W.,
364.) The following cases are cited construing the term
"saloon purposes": Craig v. Werthmueller and Craig v.
Bosch, 43 N. W., 606, 608; McDougall v. Giacomini, 13
Neb., 431; *Ex parte* Livingston (Nev.), 21 Pac., 323;
State v. Baker (Ore.), 92 Pac., 1076; State v. Donaldson
(S. Dak.), 81 N. W., 299; Cardillo v. People (Colo.), 58
Pac., 678.

The evidence was insufficient to show the authority of
the plaintiff corporation to transact business as such. Something more is required than the mere filing of a certificate
of incorporation with the Secretary of State and with the
County Clerk. The law requires the publication of notice
of incorporation, and also the appointment of an agent.
(Laws 1905, Ch. 13; Laws 1903, Ch. 53.) Failing to
comply with these requirements, a corporation is not authorized to transact business.

It is not directly alleged in the petition that the defendant Hecht guaranteed the payment of the money sued for,
or that the payment of the rent came within the terms of
the guaranty. The guaranty is not sufficiently specific in
providing for the payment of the specific sums of money.
It does not guarantee payment, but performance. While
the petition alleges that the lessors duly performed all conditions and things to be performed on their part, it does
not allege that the plaintiff so performed. And, according
to the petition, the plaintiff and not the original lessors is
the party in interest by reason of the assignment. The
assignment set forth in the petition shows it to have been
assigned not by Darnall and Craig, the lessors, in the firm
name, but by the individual members of that firm; the
matter describing them as co-partners following their signatures being merely description. Again, the assignment
transfers merely all the rights and privileges of the parties

executing it under and by virtue of the lease. It does not assign any right in or to the guaranty, the lease not being a negotiable instrument. The court erred, therefore, in admitting any evidence, and especially in admitting evidence in favor of the plaintiff, a corporation, against the defendant, Hecht.

*Burgess & Kutcher,* for defendant in error.

Even if it be conceded that the subsequent enactment of constitutional police legislation will relieve a party from the performance of his contract, where such performance would be contrary to the subsequently enacted law, the rule is not applicable to the case at bar. The obligations of the lessee are to pay rent, to keep the buildings in good repair and to insure them, etc. He is not required by the lease to do anything which is contrary to any law of the state, whether enacted before or after the execution of the lease. It is clear that the performance demanded of the lessee was not the sale of intoxicating liquors, and, therefore, the subsequent enactment of the law forbidding the sale of liquor on the premises is no excuse for his failure to perform the covenants of the lease. The Tennessee case cited in the opposing brief seems to be in point and to support the contention of plaintiff in error, but it is the only case that does. It is against the overwhelming weight of authority.

Under the terms of the lease the lessee is permitted to make any beneficial use of the premises. The lease does not require that the premises shall be used for the sale of intoxicating liquors. The lease does not specify that the premises shall be used for saloon purposes. The building is to be erected for saloon purposes and is to be suitable therefor, but the lessee might, under the lease, use the premises for any lawful purpose. Such instruments are to be considered more strongly against the grantor if there is any doubt about the meaning, and this rule would operate to give the widest use of the premises. (Kerley v. Mayer, 31 N. Y. Supp., 818; Brugman v. Noise, 6 Wis., 1.) The

use of the words "for saloon purposes" in the lease does not necessarily mean for the purpose of the sale of intoxicating liquors.   (Obyrne v. Henley (Ala.), 50 So., 83; Goozen v. Phillips (Mich.), 12 N. W., 889; Brew. Co. v. Boddie (Ill.), 55 N. E., 49; Snow v. State (Ark.), 9 S. W., 306.)

If, however, the lease clearly contemplates that the sale of intoxicating liquors is the only business that can be conducted upon the premises by the lessee, the latter is not relieved of his obligation to pay rent by reason of the change in the law  making it impossible for him to procure a new license.   "If a party will voluntarily create a duty or charge upon himself, he ought to abide by it when the other party is not in fault and when he might have provided, if he had chosen, against his responsibility in case of such accidents."   This particular question has been before many courts and they have almost unanimously held that a lessee of premises for saloon purposes is not relieved of his obligations to pay rent by reason of the enactment of a prohibition law.   (Obyrne v. Henley, *supra;* Brew. Co. v. Keenan (Tex.), 88 S. W., 197; Lawrence v. White (Ga.), 63 S. E. 631; Goodrum Tobacco Co. v. Liquor Co. (Ga.), 66 S. E., 1081; Kerley v. Mayer, *supra;* Miller v. McGuire (R. I.), 30 Atl., 966; Abadie v. Berges (La.), 6 So., 529; Bargham v. Portham (Ky.), 14 S. W., 342.)

*Camplin & O'Marr,* for plaintiff in error.   (On petition for rehearing.)

The court failed to distinguish between the rule of law that where a person knew, or should reasonably have known, that the performance of his contract might be rendered impossible or illegal by reason of putting into operation an existing law, of which he had notice, and therefore against which he should have stipulated, and the rule of law that where a person did not know or could not reasonably have known or foreseen, the passage of a law that would render the performance of his contract unlawful. There is absolutely no evidence in the record that plaintiff

in error knew, or could reasonably have known, that a law forbidding the sale of liquors outside of incorporated cities and towns would be passed. In fact, the record negatives any such knowledge.. The lease was executed more than a year before the legislature which passed the law convened, and the lessee took possession of the premises more than a year prior to the passage of the law. No one could contend that the plaintiff in error knew or could reasonably have known what laws would be enacted more than a year in the future. We believe there is a clear distinction between the facts of the case at bar and the facts in the cases cited in the opinion to sustain the decision. At the time the lease was executed, which was before the court in the Texas case of Brewing Co. v. Keenan, a prohibition law was in force, but it had not been submitted to the voters of the county wherein the premises were situated until after the execution of the lease there in question. The Texas case of Brewing Co. v. Brents is not in conflict with the principle we contend for, for the reason that the lease in that case did not restrict the use of the premises to saloon business, and the court intimated that if the lease had been so restricted the result might have been different. The New York case of Kerley v. Mayer was apparently decided upon the same principles which control the decision in the case of Brewing Co. v. Brents. The court said: "The premises might be used for any lawful purpose." This fact is not applicable to the case at bar. In the case of Obyrne v. Henley the court held that as there was not a complete destruction of the premises, the lessee must pay the amount of rent contracted for. This seems a harsh rule, and not based upon the equity of the case. In the Nebraska case of Wattles v. Ice Co., 50 Neb., 251, the court held the reverse of the rule laid down in Obyrne v. Henley, and gave the lessee a reduction in the rent where part of the demised premises were destroyed without the fault of the lessee. In Abadie y. Berges, 6 So., 529, it appeared that a Sunday closing law went into effect after the execution of the lease, and it was held that

the lessee, would not be entitled to a reduction of the rent. In that case the premises were leased for the purpose of being used for a coffee house or barroom. The court did not pass upon what the effect of the restriction would be, for it was stated that the petition did not allege that the plaintiff was absoluely deprived of the enjoyment of the premises, and in the other cases cited we think the facts are such as to render them inapplicable to the case at bar.

"Parties must always be considered as contracting with reference to the law as it existed at the time of the contract. If performance of a contract becomes wholly or in part impossible by reason of a change in the law, the contract is to that extent discharged." (3 Ency. L., 1st Ed., 898, and cases cited.) "Where the condition is possible at the date of the instrument, and subsequently becomes impossible by the act of God, or of the law, or of the obligee, the obligation and the condition both become void." (Id. 899 and cases cited.) "Where the duty or charge is imposed upon the party by the law, and not by his own contract, he will be excused from liability if performance of the duty becomes impossible without any fault on his part." (Id. 901 and cases cited.)

The court failed to construe the covenant of the lease to the effect that the premises were to be used for saloon purposes, and it should have held that said clause restricted the use of the premises to saloon purposes. It is well settled that a lease specifying a particular use implies a restriction upon any other use of the premises. (Brew. Co. v. Keenan, 88 N. W., 197; DeForest v. Byrne, 1 Hilt. (N. Y.), 43; 18 Ency. L., 635; 1 Taylor Landlord & Tenant, 194; Hotel Co. v. Emerson, 72 N. W. 119.) The lease in this case negatives any other intention of the parties to lease the premises for any purpose other than that expressly stated, for it contains a provision requiring the saloon to be closed in the event of a strike or lock-out at the mine and relieving the lessee from the payment of rent during the time that the saloon is closed. The guaranty was not assignable, for it did not expressly guarantee the payment of

money. Again, the assignment of the lease did not assign
the guaranty. (12 Ency. L., 739; Potter v. Gronbreck, 117
Ill., 404.)

SCOTT, JUSTICE.

This action was commenced in the district court of Sheri-
dan County by Acme Coal Company against Dan McCoy
and John Hecht upon a covenant of a lease to recover the
rent of a certain building and premises described in the lease
for saloon purposes for the months of November, Decem-
ber, 1909, and January 1910. The lease was executed on
September 12, 1908, by Darnall and Craig, a co-partnership,
as lessors, to Dan McCoy, lessee. The term of the lease
was five years and the lessee covenanted to pay one hundred
dollars a month as rent therefor in advance on the first day
of each and every month during the term of the lease com-
mencing October 1, 1908. The lessee entered into posses-
sion and occupied the premises and conducted a retail
liquor business therein until July 24, 1909, when he vacated
the premises and declined to pay rent thereafter. Hecht
guaranteed in writing the performance of the covenants and
conditions of the lease by McCoy. The case was tried to the
court without the intervention of a jury. McCoy was not
served and the court found in favor of the Acme Coal Com-
pany and gave judgment in its favor against Hecht for
the sum of $300 and costs of suit. Hecht brings the case
here on error.

The lease, demised premises and written guaranty are the
same as those involved in case number 639 between the
same parties, this day decided. The questions here presented
are almost identical with those raised in that case, and in so
far as they are the same they need not here be reconsidered.

It is contended that the judgment is contrary to law. By
the terms of the lease the premises were leased for saloon
purposes. The premises were outside of any incorporated
city or town. On October 9, 1908, the lessee applied to
and obtained from the board of county commissioners of
Sheridan County a license to sell and retail intoxicating

liquors therein for the period of one year. The defense interposed was that by section 1 of chapter 7, L. 1909, sec. 2833, Comp. Stat. 1910, which was enacted after the execution of the lease and while the lessee was in the occupancy and, using the premises for saloon purposes as contemplated by the provisions of the lease he was prevented from renewing his license at the expiration of the time covered by the one under which he was doing business and that the consideration for the lease after that time had failed thereby relieving him from payment of the rent for the months specified. The act referred to provides that the board of county commissioners "shall refuse to grant any license or extend any existing license for the sale of liquors at any place outside of incorporated cities and towns." Sec. 2832 *idem* provides a penalty for the selling of intoxicating liquors without a license.

It is contended that the lessee assumed his obligations under the lease with knowledge that it was within the police power of the state at any time by legislative enactment to prohibit the sale of liquor either in or outside of incorporated cities and towns or both and that having failed to provide for such contingency he is liable for the rent notwithstanding the provision of Sec. 2833, *supra*.

The question as here presented is one of first impression in this court and there is some conflict in the decisions. In O'Byrne v. Hendley, 161 Ala. 620, 50 So. Rep. 83, a lease of premises for saloon purposes was made when it was lawful to sell intoxicants and was used by the lessee as a saloon for the sale of intoxicants, soft drinks, cigars, &c., until a prohibition law went into effect. It was held that the prohibition law in the absence of a provision to that effect contained in the lease did not terminate the lease and relieve the lessee from liability for future rent, for the reason that the business was not totally destroyed. The word "saloon" as used in the lease was held to mean a place where the business included the sale of intoxicants but did not exclude the sale of other things. The terms of the lease are not set out in the opinion and we may presume

that it contained no provisions beneficial to the lessor other than the usual covenants of such an instrument. Houston Ice & Brewing Co. v. Keenan, 99 Tex. 79, 88 S. W. 197, was an action for rent upon a lease which provided that the premises should be used for the "saloon business." The lease was executed and delivered, but before the term began, prohibition was voted under a local option law. It was held that the action was maintainable notwithstanding that the sale of intoxicants would be unlawful. The court say: "Appellee had no interest in the business to be conducted in the leased building, and the appellant knew that, by a vote of the people under the existing statute referred to, the "saloon business" which included the sale of intoxicating liquors, might be prohibited before the beginning of the lease term. This was a probable contingency which an ordinarily prudent man should have foreseen and provided for in his contract, and having failed to do so, he took the risk upon himself and must abide the consequences." In San Antonio Co. v. Brents, 39 Tex. Civ. App. 443, 88 S. W. 368, the action was for rent upon a lease of a building to the lessee for the purpose of conducting a first class saloon therein. It was held that the subsequent passage of a local option law during the term whereby it became unlawful to longer maintain the saloon did not authorize the lessee to abandon the lease. In Lawrence v. White, 131 Ga. 840, 63 S. E. 631, 19 L. R. A. (N. S.) 966, it is said: "The question in this case is whether the lessee of a hotel, including a bar room, was entitled to a reduction or proportional abatement of the agreed rental, because during the term of the lease the legislature of the state enacted a law prohibiting the sale of alcholic, spirituous, malt or intoxicating liquors, and thus the bar could no longer be used for that purpose. The adjudicated cases with unusual uniformity answer this question in the negative, though they do not all give the same reasons for the ruling." In Abadie v. Berges, 41 La. Ann. 281, 6 So. 529, it was held that "a landlord cannot be held to warranty and indemnify against the 'acts of the law' in the absence of express stipulation to that end. Should

a tenant sustain damage in consequence of a constitutional police legislation adopted subsequently to his contract of lease such as the 'Sunday law' which forbids the use of the property rented to a particular use to which the lessee applies it, in a special way and on a special day, such damage is *injuria sine damno,* which is not compensable. Such legislation could have been foreseen, and does not impair rights under the contract." In Miller v. McGuire, 18 R. I. 770, 30 Atl. 966, it was said: "To constitute an eviction which will operate either to annul the lease or as a suspension of rent, the act complained of must have been done by the landlord or by his procurement, with the intention and effect of depriving the lessee of the use and enjoyment of the demised premises in whole or in part." In Kerby v. Meyer, 10 Misc. Rep. 718, 31 N. Y. Supp. 818, a lease was made of premises "to be used and occupied only as a first class liquor saloon." The lease was executed and delivered, afterward, and before the commencement of the term, the legislature enacted a law forbidding the sale of liquor within 200 feet of a church or school house, by reason of which it became impossible for the lessee to obtain a license for the sale of intoxicating liquors. It was held that this did not relieve the lessee from payment of the rent. The court said: "It is only when the lessee is deprived without his fault, of the use of the premises for any purpose, that rent ceases; and, if the lessee were deprived in this instance it was his own fault, for he should have stipulated against the contingency of a refusal of a license." In Goodrum Tobacco Co. v. Potts-Thompson Liquor Co., 133 Ga. 776, 66 S. E. 1081, a lease provided "that the purpose of this lease is for the operation by second party of a general retail liquor business." During the term of the lease and while the lessee was in the occupancy of the leased premises and conducting a retail liquor business therein, a law prohibiting the sale of intoxicating liquors was enacted and went into effect. It was held that the prohibition law did not constitute a defense to an action for rent accruing upon the contract after such enactment in the absence of a stipulation

therein relieving the lessee from such payment. The same rule is adhered to in Baughman v. Portman, 12 Ky. L. Rep. 342, 14 S. W. 342. We think the reasoning of these cases clearly establish the law as applicable between a landlord and tenant upon the covenants of a lease. They constitute the great weight of authority. Our attention is called to one case which holds to the contrary, Heart v. East Tenn. Brewing Co., 113 S. W. Rep. 364, which stands alone. Entertaining the view as expressed by a majority of the courts we do not deem it necessary for the decision of this case to decide whether the words "for saloon purposes" as used in the lease were so used in a restrictive or a permissive sense. In either event the tenant would not be relieved from the payment of the rent. (Goodrum T. Co. v. Potts-Thompson Co., *supra;* Houston Ice & Brewing Co. v. Keenan, *supra;* Lawrence v. White, *supra.*) The sale of intoxicating liquors is always subject to regulation by the state in the exercise of its police power, and when the landlord has no interest other than a pecuniary one of protecting his property from spoliation and the value of its use as rental, the principles of law announced in the foregoing decisions are applicable. A lease for unlawful purposes at the time of its execution is void. (Secs. 469, 470, 471, Underhill on Landlord and Tenant.) A provision in the lease for relief from further liability for rent or for an abatement or proportional reduction thereof in the event of a change of the law with reference to the business to be conducted on the premises is for the benefit of the lessee and when the landlord has no interest in the business to be conducted, a change in the law during the term of the lease whereby such business is wholly or partly prohibited, does not of itself relieve the tenant from his obligation to pay the rent for the entire term.

From the evidence in this case the landlord is without fault. Through no act of the lessors or the company has the lessee been prevented from the peaceable occupancy and enjoyment of the demised premises. There has been no election under the lease to declare a forfeiture nor has

there been any attempt to wrest possession from the lessee, nor has there been a surrender and acceptance of the premises. It was not stipulated in the lease that the lessee should be relieved from the payment of the rent except during the time it might be closed upon notice that the employees of the lessors and their assigns in the operation of their coal mines in the vicinity of the leased premises were on a strike or locked out. This is the only contingency provided in the lease relieving the lessee from payment of the rent and was limited to the duration of certain conditions. This provision by implication excludes the relief of the lessee from payment of rent during the term of the lease in all cases except when required by the company, in the exercise of its right, to keep the saloon closed. Relief from payment of the rent here sued for is not sought upon this nor upon any other provision contained in the lease and we cannot read into it a provision or agreement not therein contained either expressly or by necessary implication.

After the evidence had been taken and during the argument of counsel to the jury, the defendant requested the court to re-open the case and allow him to introduce evidence to the effect that the rental value of the building mentioned in the petition for saloon purposes, other than the sale of intoxicating liquors and beverages, did not exceed the sum of $15 per month. The denial of this request is here assigned as error. This ruling is sustained for two reasons, first: It was not an abuse of discretion to deny the motion, and, second: There is no provision in the lease for an abatement or proportional reduction of the rent for any cause upon which relief from payment is sought. (Lawrence v. White, *supra*.)

It is contended that Hecht's liability on his guaranty ceased upon the expiration of the license. His guaranty is unconditional, equally as broad and measures up to that of his principal. There is no express provision or condition whereby he is to be relieved from his obligations. He, also, will be presumed to have known that McCoy, his principal,

might be prevented from obtaining a license by the state in the exercise of its police power. His guaranty was one of performance and not of collection. He was surety for the payment of the rent and was liable therefor upon McCoy's failure to pay. (Hecht v. Acme Coal Co., this day decided).

No error appearing in the record the judgment will be affirmed.                                         *Affirmed.*

Beard, C. J., and Potter, J., concur.

### ON PETITION FOR REHEARING.

Beard, Chief Justice.

This case was decided February 28, 1911, the opinion appearing in 113 Pac. 788. The plaintiff in error has filed a petition for rehearing, stating several reasons therefor. It is alleged that we failed to consider and decide upon the sufficiency of the petition in the district court to state a cause of action against the defendant Hecht as guarantor. As we understand counsel, this claim is based on the contention that the assignment, as written on the lease, was no assignment of the guaranty, and that the guaranty was not assignable, and therefore the assignee could not maintain an action thereon in its own name. We do not understand it to be claimed that the lease could not be assigned; and certainly no such contention could be maintained. The assignment of the lease was an unqualified assignment of all of the rights and privileges of the lessor under and by virtue of the lease; and while Hecht was not, strictly speaking, a surety, his guaranty stood as security for the performance by the lessee of the covenants of the lease, among which was the payment of the rent, and passed to the assignee by the assignment. The general rule is stated in 4 Cyc. 69, where numerous authorities are cited, thus: "In the absence of any stipulation or provision in the contract of assignment concerning securities or other incidents, an unqualified assignment of a chose in action carries with it, as incident to the chose, all securities held by the assignor as collateral to the claim, and all rights incident thereto, and vests in the assignee the equitable title to such collat-

eral securities and incidental rights," and in 5 Enc. Law & Prac. 945, "The general rule is that the assignment of a debt carries with it every remedy and security available to the assignor as incident thereto, although they are not specially named in the instrument of assignment." And under a statute like ours which provides that "an action must be prosecuted in the name of the real party in interest," (Sec. 4311, Comp. Stats.) the rule of the common law which required the assignee to sue in the name of the assignor is not in force. (4 Cyc. 97; 5 Enc. L. & P. 967.) The case of Potter v. Gronbeck, 117 Ill. 404, is cited and relied upon by counsel, but the case is not applicable here. It was held in that case that the instrument sued upon was not assignable under the Illinois statute so as to vest the legal title in the assignee, and for that reason the assignee could not maintain the action in his own name. There was no statute referred to authorizing or requiring the action to be prosecuted in the name of the real party in interest, as is the case in this state.

It is further urged that the court failed to consider as material the provision of the lease to the effect that the premises were to be used for "saloon purposes," and in not deciding that said clause in the lease restricted such use to "saloon purposes." It may be conceded that the lease so restricted the use of the premises. But what is meant by saloon purposes? No doubt, as used in the lease, it meant for the purpose of selling intoxicating liquors, but we do not think it can be held as a matter of law that "saloon purposes" means for the sale of intoxicating liquors exclusively. Indeed the parties to the lease did not put that construction upon it. One of the lessors, A. K. Craig, was called as a witness by the plaintiff and on cross examination by counsel for defendant Hecht, was asked:

Q. You leased these premises to Mr. McCoy for the purpose of conducting a retail liquor business?

An objection to the question by counsel for plaintiff was overruled and he answered, "Not exclusively."

Q.   Well you leased it to him for the purpose of carrying on a saloon there?

A.   Yes sir.

Q.   And you built the building for saloon purposes?

A.   Yes sir.

Q.   And that was well understood between you and McCoy?

A.   Yes sir.

Q.   And also by John Hecht?

A.   Yes, I suppose so.   He understood I suppose the same thing.

Q.   And he entered upon that and did conduct a saloon, din't he, in the building, McCoy?

A.   He entered upon the premises and conducted and sold liquor, cigars and soft drinks in connection with his liquor business.

Q.   In connection with the saloon?

A.   Yes sir.

We think it quite clear that both the lessors and the lessee contemplated that the business should include the sale of soft drinks and cigars as well as intoxicating liquors. The facts in this case are almost identical with those in O'Byrne v. Henley, 161 Ala. 620, 50 So. 83, cited in the original opinion.

The remainder of the brief of counsel in support of the petition for rehearing is devoted to the discussion of the main question in the case. We have again examined the authorities and believe the decision as handed down is correct in principle and sustained by the weight of authority. In addition to the cases cited in the opinion, we cite: Gaston v. Gordon, 94 N. E. (Mass.) 307. A rehearing is denied.

*Rehearing denied.*

POTTER, J., concurs.

SCOTT, J., did not sit.