JACOB KAISER, Respondent, *v.* RUDOLPH ZEIGLER, Appellant.

(Supreme Court, Appellate Term, Second Department, November-December, 1920, Term — Filed April, 1921.)

Landlord and tenant — effect of Eighteenth Amendment to the Constitution of the United States upon lease of premises to be used as a "saloon and hotel."

Where a case is submitted for decision upon statements of counsel, the facts as stated by the appellant in the court below must be accepted as true on appeal.

A covenant in a lease for five years made in 1916, of premises to be used and occupied as a "saloon and hotel," that the tenant will comply with all statutes "for the correction, prevention and abatement of nuisances or other grievances" does not cover the Eighteenth Amendment to the Constitution of the United States or any statute for the enforcement thereof.

Before said constitutional amendment became operative the landlord and tenant orally agreed that after it became effective there should be a reduction in the rent, and for several months the reduced rental was paid and accepted. In an action to recover the rent for the succeeding month in the amount

Appellate Term, Second Department, April, 1921. [Vol. 115.

reserved in the lease, *held,* that the adoption of the said constitutional amendment created a situation not within the contemplation of the parties when the lease was made, and terminated it.

APPEAL by the defendant from a judgment of the Municipal Court of the city of New York, borough of Queens, second district, entered in favor of the plaintiff after a trial before the court without a jury.

Benjamin Berger, for appellant.

Frederick S. Rauber, for respondent.

CROPSEY, J. No proof was taken on the trial. The case was submitted for decision upon the statements of counsel. For the purposes of this appeal, the facts as stated below by appellant's attorney must be accepted as true. *Adler* v. *Miles,* 69 Misc. Rep. 601, 603.

The action is for rent under a sealed written lease. The lease is admitted; also the non-payment of the rent sued for. The defense is that before the Eighteenth Amendment to the Federal Constitution became effective the tenant, claiming that his lease ·would be terminated when that amendment became operative, negotiated with his landlord for a new arrangement thereafter, and that the parties agreed that after the amendment became effective the rent should be $250 a month instead of $300 as provided in the lease. From the statement of counsel made upon the trial, it seems that rental reserved in the lease was paid up to January, 1920, and that the reduced rental was· accepted by the landlord for the months of January and February. The same reduced amount was tendered for the month of March, but was refused. This action is to recover $300, the rent reserved in the lease

for the month of March. Thus, the question is presented as to the effect of the adoption of the Eighteenth Amendment upon a lease of property for a saloon where intoxicating liquors were to be sold.

This lease was made in May, 1916. Its term was five years from its execution. It provided that the premises were to be " used and occupied as a saloon and hotel upon the conditions and covenants following." These are the conditions and covenants that may be material:

" *First.* The rent was to be paid in equal monthly payments of $300. in advance.

" *Third.* That the tenant shall promptly execute and comply with all statutes, ordinances, rules, orders, regulations and requirements of the Federal, State and City governments and all other departments and bureaus applicable to said premises for the correction, prevention and abatement of nuisances or other grievances in, upon or connected in said premises during said term, and shall also promptly comply with and execute all sales, orders and regulations for the prevention of fires, at his own cost and expense.

" *Fourth.* That the tenant shall not assign this agreement or under-let or under-lease the premises or any part thereof, or make any alterations in the premises without landlord's consent in writing, or occupy or permit or suffer the same to be occupied for any business or purpose deemed disreputable or extra-hazardous on account of fire, under the penalty of damages and forfeiture."

" *Ninth.* And the tenant further covenants that he will, during the term of this lease, keep and sell on the said premises certain beer known as ' George Ehret's Beer '."

It is urged that as the lease is under seal, it cannot be modified by a parol agreement. And this is so if

the parol agreement is unexecuted. *Coe* v. *Hobby,* 72 N. Y. 141; *Zindler* v. *Levitt,* 132 App. Div. 397; *Stevenson Brewing Co.* v. *Junction Realty Co.,* 156 id. 271. But if the parol modification has been executed then it is effective. So this, in any event, would prevent the plaintiff, if he sought to do so, from recovering the difference between the original rental and the reduced rental for the months during which he accepted the reduced amount. *McKenzie* v. *Harrison,* 120 N. Y. 260; *Hayne* v. *Sealy,* 71 App. Div. 418. And if the landlord has himself breached the agreement, then a parol modification of a lease under seal, if made for a good consideration and if it has been partly executed, can be enforced. *San Reno Hotel Co.* v. *Brennan,* 64 Hun, 607. The decision of this appeal, however, does not necessarily turn upon the foregoing considerations. The contention of the appellant is that the passage of the Eighteenth Amendment terminated the lease and that the parties thereafter were free to make any new agreement they saw fit. If the adoption of that amendment had the effect of terminating this lease, then the plaintiff was not entitled to the judgment he has obtained.

The lease in its terms provides that the property is to be used and occupied as a " saloon and hotel." While the language does not say *only* for such purposes, or *not for any other* purpose, that is immaterial. Express words of restriction are not necessary where the language used shows that no other use was to be permitted than that specified. In such a case there is an implied covenant not to use the premises for any other purpose. *Weil* v. *Abrahams,* 53 App. Div. 313.

There is a conflict of authority in the various states upon the question of whether the adoption of a constitutional amendment or a statute enforcing prohibition, after the making of a lease, terminates it, where

the premises were to be used as a saloon for the sale of intoxicating liquor. Some of the cases say that the lease is not affected by such an enactment, even though the tenant thereafter is wholly deprived of the use of the property. These cases seem to hold that if the tenant would be relieved from such a situation he should have provided against it by having a suitable clause inserted in the lease. *Goodrum Tobacco Co.* v. *Potts-Thompson Liquor Co.,* 133 Ga. 776; *Potts-Thompson Liquor Co.* v. *Capital City Tobacco Co.,* 137 id. 648, 654; *Hecht* v. *Acme Coal Co.,* 19 Wyo. 18. The great weight of authority, however, and that which seems to be founded upon the better reasoning, is to the effect that such an enactment destroys the subject matter of the contract and makes performance impossible and hence terminates the lease. *Heart* v. *East Tennessee Brewing Co.,* 121 Tenn. 69; *Kahn* v. *Wilhelm,* 118 Ark. 239; *Hooper* v. *Mueller,* 158 Mich. 595; *Brunswick-Balke-Collender Co.* v. *Seattle Brewing & Malting Co.,* 98 Wash. 12; *McCullough Realty Co.* v. *Laemmle Film Service,* 165 N. W. Repr. 33; *Christopher* v. *Charles Blum Co.,* 82 So. Repr. 765; *Burgett* v. *Loeb,* 43 Ind. App. 657, 659; *Houston Ice & Brewing Co.* v. *Keenan,* 99 Tex. 79; *American Mercantile Exchange* v. *Blunt,* 102 Maine, 128; *Greil Bros. Co.* v. *Mabson,* 179 Ala. 444. See, also, cases in Note, L. R. A. 1917 C, p. 935.

The same principle is involved in cases holding that an act of Congress, or of the president of the United States done pursuant to the authorization of congress, fixing the price of certain articles at a less sum than had previously been agreed upon between parties, relieved them from the obligations of their contract. *Boret* v. *Vogelstein & Co., Inc.,* 188 App. Div. 605; *Standard Chemicals & Metals Corp.* v. *Waugh Chemical Corp.,* 194 id. 254. See, also, *Mawhinney* v. *Millbrook Woolen Mills,* 172 N. Y. Supp. 461, 467.

Upon the same principle it has been held that a lease for a moving picture show was terminated by the subsequent passage of a city ordinance prohibiting such shows in the leased premises. *Adler* v. *Miles*, 69 Misc. Rep. 601; and cases cited. In the case at bar, the court below apparently based its decision upon *Kerley* v. *Mayer*, 10 Misc. Rep. 718; affd., 155 N. Y. 636. But that case admittedly held that the tenant was not limited to using the premises as a saloon, but could use them for any lawful purpose. That being so, the passage of the statute prohibiting the existence of a saloon in the leased premises because of their location, was held not to terminate the lease.

Some courts, while agreeing with the rule that if the permitted use of the leased premises is prohibited by subsequent statute the lease is terminated, hold that this is not so if the tenant may continue to use the premises for any purpose. *Conklin* v. *Silver*, 174 N. W. Repr. 573. Upon this theory, although premises are to be used only as a saloon, inasmuch as such use permits the sale of cigars and non-intoxicating drinks as well as intoxicating ones, the subsequent prohibition against the sale of the latter has been held not to cancel the lease. *O'Byrne* v. *Henley*, 161 Ala. 620; *Matter of Bradley*, 225 Fed. Repr. 307. So a lease for a " saloon and restaurant " has been held not to be terminated because the tenant could still continue the restaurant (*Standard Brewing Co.* v. *Weil*, 129 Md. 487); and upon the same principle a lease as a " hotel and bar-room " has been held not to be affected (*Lawrence* v. *White*, 131 Ga. 840); likewise one for a " cafe "— as that was held to be an eating place (*Proprietors Realty Co.* v. *Wohltman*, 112 Atl. Repr. 410). But the true rule is believed to be that if the statute adopted after the making of the lease deprives the tenant of the beneficial use of the prop-

erty — that is, prevents him from using it for the primary and principal purpose for which it was rented — the lease is terminated although other incidental uses might still be made of it. Thus, a lease of premises to be used as a saloon and restaurant and with the privilege of selling cigars and having a boot-black stand therein, has been deemed to be a lease for one main purpose, namely, the maintenance of a saloon, and the subsequent enactment of a prohibition statute has been held to terminate the lease. *The Stratford* v. *Seattle Brewing & Malting Co.,* 94 Wash. 125. And a lease for a " saloon and hotel " was held to be for a single purpose, and as the tenant could no longer use it as a saloon because of legislation, he was held to be relieved of his obligations under the lease. *Kahn* v. *Wilhelm,* 118 Ark. 239. And although the court recognized that non-intoxicants might be and were sold in saloons, where the tenant could no longer sell intoxicating liquors in premises leased for a saloon, the lease was held to be terminated. *Heart* v. *East Tennessee Brewing Co.,* 121 Tenn. 69.

In the case at bar the lease, as has been noted, provides that the premises are to be used as a " saloon and hotel," and it covers, in addition to the buildings, many specific articles of personal property, including: " bar, back-bar, steam table, motor, seltzer machine, ninety chairs, twenty-four tables, lunch counter, cash register, twenty beds, springs, mattresses, bedding, furnishings, two gas ranges, one coal range, three ice-boxes, ten beer pumps and pipes " and also all table, dish, and bed linen, glassware, and cooking utensils. From the lease there would appear to be twenty bed-rooms in the premises. The premises of course were to be used as a hotel, but under the terms of the lease, only in connection with the maintenance of the saloon. Under the provisions of the Liquor Tax Law in effect

at the time the lease was made, the sellers of liquor had greater privileges where the liquor tax certificate covered premises which were used as a hotel having more than ten rooms than in other places. § 30, subd. N. It is apparent from the lease that the lessor had an interest in furthering the sale of a particular kind of beer, for the tenant was required to covenant that he would " keep and sell on the said premises certain beer known as '. George Ehret's Beer '." We think the lease shows that the use of the premises as a hotel was not to be independent of their use as a saloon, but on the contrary that there was only one use contemplated and that was as the lease states, for a " saloon and hotel." It is difficult to conceive of any specified use of premises which would not permit of some other incidental use. And if the specified use was later prohibited by statute and tenant thus was prevented from using the premises for the purpose for which they were leased and for which they were to be used under the terms of the lease, it would be an injustice to hold that the lease was not terminated merely because some other incidental use could still be made of the property. Such a holding would mean that no lease could be held to be thus ended. We think the sensible and sound rule is that the lease is terminated where the premises may not be used longer for the purpose specified in the lease and that it is immaterial whether some incidental use might still be made of them. The passage of such legislation created a situation that was not within the contemplation of the parties when the lease was made. It changed the entire situation and brought to naught their agreement. To say the lease continued for some other use of the premises would be to make a new contract. The agreement cannot be carried out and the court should adjudge that it is terminated.

The provisions in the lease in question do not cover the passage of a prohibition statute. The obligation of the tenant was to comply with all statutes " for the correction, prevention, and abatement of nuisances or other grievances." This does not cover such a statute or amendment as the one now being considered.

Since this opinion was written, our attention has been called to the case of *Doherty* v. *Monroe Eckstein Brewing Company,* 115 Misc. Rep. 175. The decision in that case is in exact accord with our views and is an additional authority in support of our determination.

Judgment reversed and new trial granted, with thirty dollars costs to appellant to abide the event.

KELBY and MANNING, JJ., concur.

Judgment reversed, and new trial granted, with costs to appellant to abide event.