COLONIAL OPERATING CORPORATION, Landlord, *v.* HANNAN SALES & SERVICE, INC., Tenant.*

Municipal Court of New York, Borough of Queens, Second District, March 21, 1942

*Sidney C. Norris*, for the landlord.

*Richard J. Barry*, for the tenant.

CRAWFORD, J. This is a summary proceeding instituted by the landlord against the tenant for the nonpayment of rent for the months of December, 1941, January and February, 1942. The

* Revd. 178 Misc. 885; see, also, *Schantz* v. *American Auto Supply Co., Inc.*, 178 Misc. 909.

proceeding is predicated upon a written lease executed between the respective parties herein, dated December 1, 1937, for a term expiring July 31, 1943, at a specified rental, premises to be used, " *only* for a showroom for automobiles and automobile accessories." The lease further acknowledges receipt for security from the tenant in the sum of $500 — to be refunded under certain conditions together with three per cent interest.

The tenant originally interposed an answer consisting of a general denial, a partial defense, and a counterclaim; said partial defense was subsequently amended to read as a complete defense, and is based upon the fact that, (a) on or about January 1, 1942, the Office of Production Management, by virtue of authority granted by the Congress of the United States (54 U. S. Stat. at Large 676, as amd. by 55 U. S. Stat. at Large 236; U. S. Code, tit. 41 preceding § 1) ordered the prohibition of the sale of passenger automobiles (referring to 1942 model passenger automobiles, and/or any automobile which had been used less than 1,000 miles) until January 15, 1942; (b) that this order was subsequently extended to include sales of new passenger automobiles up to February 2, 1942; (c) and that on or about the 20th day of January, 1942, a further order was issued by the Office of Production Management prohibiting the manufacture of passenger automobiles (with certain exceptions not applicable to the present issue).

The background of this legislation, governmental decrees and orders is well known; the country's unpreparedness to cope with world-wide action, offensively and defensively; the necessity for haste in the manufacture of war equipment of all kinds; and that time was of the essence of all war production and the conversion of civilian industries, including automobile manufacturing, towards that supreme effort.

There has since followed the complete re-tooling in the entire automobile industry for war production " for the duration " and said industry is presently devoted towards the manufacture of airplanes, tanks, cannon and various types of munitions.

Legal precedent for the factual situation presented herein appears to be lacking, although there are some cases which seem to be analogous in principle.

" Leases, like other contracts, are to receive a reasonable construction, one that will carry out the intention of the parties to them." (*Younger* v. *Campbell*, 177 App. Div. 403, 408.)

On the question of fact, as to the " use " of the demised premises, I am of the opinion that the intention of both the landlord and the tenant, as expressed in the written lease, was solely for new cars. This conclusion is further corroborated by the evidence upon

the trial that the tenant also maintained a separate office and lot, adjacent to the demised premises, for the display and sale of used cars.

In *Chautauqua Assembly* v. *Alling* (46 Hun 582, 586) the court held that words like " only " used by the landlord herein in drafting its lease, are words of restriction, and are equivalent to an express covenant of the lessee not to put the premises to any other purpose or use.

In the later case of *Kaiser* v. *Zeigler* (115 Misc. 281, 284), the Appellate Term, by CROPSEY, J., said: " While the language does not say *only* for such purposes, or *not for any other* purpose, that is immaterial. Express words of restriction are not necessary where the language used shows that no other use was to be permitted than that specified. In such a case there is an implied covenant not to use the premises for any other purpose. *Weil* v. *Abrahams*, 53 App. Div. 313."

Research discloses some conflict of authority in various states in this country upon similar questions of law and they seem to hold that if the tenant would be relieved from such a situation, he should have provided against it by having a suitable clause inserted in the lease. (*Goodrum Tobacco Co.* v. *Potts-Thompson Liquor Co.*, 133 Ga. 776; 66 S. E. 1081; *Potts-Thompson Liquor Co.* v. *Capital City Tobacco Co.*, 137 Ga. 648, 654; 74 S. E. 279; *Hecht* v. *Acme Coal Co.*, 19 Wyo. 18; 113 P. 788; 117 id. 132.)

The great weight of authority, however, and that which seems to be founded upon the better reasoning, is to the effect that such a governmental act or decree destroys the subject-matter of the contract and makes performance impossible, and thereby terminates the lease. (*Kaiser* v. *Ziegler, supra; Greil Bros. Co.* v. *Mabson*, 179 Ala. 444; 60 So. 876; *Kahn* v. *Wilhelm*, 118 Ark. 239; 177 S. W. 403; *Industrial Development & Land Co.* v. *Goldschmidt*, 56 Cal. App. 507; 206 P. 134; *McCullough Realty Co.* v. *Laemmle Film Service*, 181 Iowa 594; 165 N. W. 33; *Hooper* v. *Mueller*, 158 Mich. 595; 123 N. W. 24; *Heart* v. *East Tennessee Brewing Co.*, 121 Tenn. 69; 113 S. W. 364; *Brunswick-Balke-Collender Co.* v. *Seattle Brewing & Malting Co.*, 98 Wash. 12; 167 P. 58; *Shepard* v. *Sullivan*, 94 Wash. 134; 162 P. 34; *Koen* v. *Fairmont Brewing Co.*, 69 W. Va. 94; 70 S. E. 1098; 36 C. J., p. 319, § 1123.)

The same principle is involved in cases holding that an Act of Congress, or the President of the United States, done pursuant to the authorization of Congress, fixing the price of certain articles at a less sum than had been previously agreed upon between the parties, relieved them from the obligation of their contract. (*Boret* v. *L. Vogelstein & Co., Inc.*, 188 App. Div. 605; *Standard Chemicals*

& *Metals Corp.* v. *Waugh Chemical Corp.*, 194 id. 254; *Mawhinney* v. *Millbrook Woolen Mills, Inc.*, 105 Misc. 99; revd., 231 N. Y. 290.)

In the case of *Mawhinney* v. *Millbrook Woolen Mills* (*supra*), plaintiff and defendant entered into a contract on February 9, 1917 wherein and whereby defendant agreed to manufacture, sell and deliver to the plaintiff certain woolens, at a specified price, and at a specified time. A partial delivery was made, and the defendant failed to manufacture and deliver the balance of the order, the reason therefor being that the defendant had contracted with the United States Government to manufacture and deliver a certain quantity of melton, to be used in the manufacture of uniforms. The National Defense Act of June 3, 1916 (39 U. S. Stat. at Large 213, § 120; U. S. Code, tit. 50, § 80) provided in part " compliance with all such orders for products or material shall be obligatory on any individual, firm, association, company, corporation, or organized manufacturing industry or the responsible head or heads thereof and shall take precedence over all other orders and contracts theretofore placed with such individual, firm, company, association, corporation, or organized manufacturing industry." The defendant set up three defenses based upon (a) curtailment of civilian output; (b) the National Defense Act, which required the defendant to desist from making deliveries to the plaintiff; (c) termination of the contract by virtue of the governmental orders. The Court of Appeals, in an opinion rendered by CRANE, J., held:

" The undisputed facts in this case show that the government made contracts for woolens with the defendant which required the use of its looms and materials and preference in the execution of the work. This preference was necessitated within the meaning and purpose of the above act of Congress and constituted a good defense for the delay or cancellation of the plaintiff's contracts.

" Under a similar state of facts the same conclusion has been reached by the Circuit Court of Appeals, Second Circuit, in *Roxford Knitting Co.* v. *Moore & Tierney* (265 Fed. Rep. 177). It has also been held that where a performance of a contract is suspended by government work for a material length of time, execution of the contract is entirely excused. (*Metropolitan Water Board* v *Dick, Kerr and Co., Ltd.* Law Reports, Appeal Cases 1918, page 119 [House of Lords].)

" Where this act of Congress applies and government work has delayed the execution of other contracts, such delay is excused at law; it is a defense to an action for a breach of contract. (*Dolan* v. *Rodgers*, 149 N. Y. 489, 493; *Metropolitan Water Board* v. *Dick, Kerr & Co., Ltd.*, *supra; Matter of Shipton, Anderson & Co.*, L. R. 1915, 3 Kings Bench 676.) "

·This principle of law was further enunciated in the more recent case of *Garcia Sugars Corporation* v. *New York Coffee and Sugar Exchange, Inc.* (7 N. Y. Supp. [2d] 532, 533, 534) wherein the court held: " It is no longer a debatable proposition in juridical fields that when a contract is rendered impossible of performance either by act of God or by act of law or by act of nature that under such circumstance performance can not be had. In this particular instance, by virtue of a rule or order or command of the national government with reference to the quota of admissible Cuban sugar, the contract upon which the plaintiff relies was rendered impossible of performance. * * * We need look no further for authority supporting the rule of law previously adverted to, to justify relieving the defendants other than the Exchange from any responsibility to this plaintiff, that the case of *Adler* v. *Miles*, 69 Misc. 601; 126 N. Y. Supp. 135, and that of *Mawhinney* v. *Millbrook Woolen Mills*, 231 N. Y. 290; 132 N. E. 93, 15 A. L. R. 1506."

No decision in this State relied upon by the landlord casts doubt upon the foregoing conclusion.

In *Adler* v. *Miles* (69 Misc. 601), the facts were analogous to those before this court, in that the lease was valid when made for the operation of a motion picture theatre, but that through the order of the mayor, the use to which the demised premises were restricted, became unlawful.

The Appellate Term in an opinion by SEABURY, J., held:

" The general rule was declared in the old case of *Paradine* v. *Jane* (Aleyn, 26, 27): ' that where the law creates a duty or charge, and the party is disabled to perform it without any default in him, and hath no remedy over, there the law will excuse him. * * * but where the party by his own contract creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract.'

" This general rule does not apply where performance becomes impossible by a change in the law or by reason of action taken under governmental authority. In such a case the reason for the general rule does not exist.

" The parties to the lease contracted with a view to the law as it existed at the time the lease was made. To hold them bound to anticipate future legislation would be equivalent to making them obligate themselves to the performance of conditions prescribed by others which, in the nature of things, could not have been within the contemplation of the parties at the time the contract was made.

" The parties to the lease contracted to do a thing which at the time the lease was made was lawful. Public authority, in accord-

ance with law, has provided that the very thing, which the parties in their lease contemplated should not be done. To carry out the lease according to its terms has *now* become unlawful. It follows, therefore, that the lease cannot be performed according to its terms, and under such circumstances the obligation of the lessee to pay rent is discharged."

In the still earlier case of *Brick Presbyterian Church* v. *Mayor, etc., of City of New York* (5 Cow. 538) the same rule was clearly expressed. In that case it appeared that the corporation of the city of New York, conveyed lands for the purposes of a church and cemetery, with a covenant for quiet enjoyment, and afterwards, pursuant to a power granted by the Legislature, passed a law prohibiting the use of these lands as a cemetery. The court thereupon held that such action was not a breach of covenant, but that the covenant itself was repealed.

In *People* v. *Globe Mutual Life Ins. Co.* (91 N. Y. 174) where an insurance company was restrained by an order of the court from further prosecuting its business and a receiver appointed, the Court of Appeals held that a contract entered into by it with a general agent for his services for a specified time, was thereby annulled by the action of the State, and that the general agent had no cause of action for nonperformance by the company.

A number of well-considered cases analyze the issues herein upon a sound basis and point to a fundamental rule of the law of contracts, *i. e.*, " a contract in its inception must possess the essentials of having competent parties, a legal object, and a sufficient consideration." (*Industrial Development & Land Co.* v. *Goldschmidt, supra*.) Lacking any of these, no binding obligations result; hence, a contract which contemplates the doing of a thing which is unlawful at the time of making thereof is void. For the same reason, a contract which contemplates the doing of a thing, at first lawful, but which afterward and during the running of the contract becomes unlawful, is affected in the same way and ceases to be operative upon the taking effect of a prohibitory law. (See Pomeroy on Contracts, § 280; Bishop on Contracts, § 394; Clark on Contracts, § 681; Wharton on Contracts, § 305.)

In Massachusetts, the rule referred to above has been applied and expressed in the early case of *Baylies* v. *Fettyplace* (7 Mass. 325, 338), wherein it was said: " Now it is clearly settled, by innumerable authorities, that whenever a contract, which was *possible* and *legal* at the time it was made, becomes *impossible* by the act of God, or illegal by an ordinance of the state, the obligation to perform it is discharged."

More concisely, the rule may be stated thus, that if a statute is adopted after the making of the lease and it deprives the tenant of the beneficial use of the property — that is, prevents him from using it for the primary and principal purpose for which it was rented — the lease is terminated, *although* other incidental uses might still be made of it. (*Kaiser* v. *Zeigler, supra.*) To say that the lease continued for some other use of the premises would be to make a new contract. Since the original lease cannot be carried out because of governmental orders or decrees, the court should adjudge that it is terminated.

This court therefore concludes that the tenant (a) was prevented by action of the Federal government from occupying the premises for the purposes for which it leased them; (b) the contract became impossible of performance by operation of law; (c) the tenant is entitled to a dismissal of the petition herein and the return of the security deposit of $500, with interest.